THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARVID D. NIX, Defendant-Appellant.

Third District   No. 3—84—0143

Opinion filed April 1, 1985.

BARRY, J., dissenting.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell, State's Attorney, of Galesburg (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Arvid Nix, appeals from his conviction for harassment of a witness. The defendant raises multiple issues on appeal. Because we find that he was not proved guilty beyond a reasonable doubt, we reverse.

The defendant was charged with battery, aggravated battery, and harassing Donna Kurlinkus. Kurlinkus, a Multinarcotics Enforcement Group (MEG) agent, had testified against Nix in an earlier trial which resulted in his conviction of delivery of a controlled substance. On September 1, 1983, Kurlinkus and another agent, Donald Espinoza, were in the Taco House in Galesburg. The defendant entered the res-

taurant between 9 and 9:40 p.m. Kurlinkus subsequently left the table and walked toward the restrooms. According to Kurlinkus, the defendant followed her. As she opened the door leading to the hallway in front of the restrooms, the defendant grabbed her arm and asked her, "How is it going?" Kurlinkus entered the women's restroom and locked the door. A short time later, she emerged from the restroom. The defendant was still standing in the hallway. He again grabbed her arm and stated, "I want to talk to you."

Kurlinkus testified that she opened the door leading into the restaurant and wedged her knee in the opening. The defendant then slammed the door against her knee. Kurlinkus testified that the struggle then ceased for no apparent reason. During this incident, Kurlinkus did not call to Espinoza for help.

Espinoza testified that when Kurlinkus returned to their table, her eyes were wide and her voice was pitched higher than was normal. He stated that Nix then identified Kurlinkus and him as MEG agents. Espinoza and Kurlinkus then left the restaurant.

The defendant testified in his own behalf that he did not follow Kurlinkus or encounter her in the restroom area. He stated that he did not intend to harass Kurlinkus. He acknowledged that he identified her as an agent.

The jury acquitted the defendant on the charges of battery and aggravated battery. The defendant was convicted of harassment and sentenced to a three-year term of imprisonment.

The offense of harassment of a witness is established in section 32—4a of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 32—4a). That section provides in relevant part:

> "A person who, with intent to harass or annoy one who has served as a juror or as a witness in a legal proceeding, \*\*\* because of the testimony of such witness, communicates directly or indirectly with the juror or witness in such a manner as to produce mental anguish or emotional distress \*\*\* commits a Class 4 felony."

Section 32—4a has not yet been interpreted by a court of this State.

The defendant asserts that he was not proved guilty of the offense beyond a reasonable doubt because the State failed to prove that he possessed the requisite intent and that Kurlinkus suffered mental anguish or emotional distress.

●1 The decision of the finder of fact will not be reversed on review unless the evidence is palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. (*People v. Reese* (1973), 54 Ill. 2d 51,

294 N.E.2d 288.) The crime of harassment as defined in section 32—4a is a specific intent crime. (See *State v. Zeit* (1975), 22 Or. App. 480, 539 P.2d 1130.) The State was required to prove that the defendant acted with the "intent to harass or annoy." The requisite intent may be inferred from the facts and circumstances surrounding the communication.

■ On the facts and circumstances in the instant case, we find that the State failed to prove that the defendant acted with the intent to harass or annoy. The jury's verdicts on the charges of battery and aggravated battery demonstrated that the jurors gave little credence to Kurlinkus' testimony regarding any physical assault on her in the restroom area. The question, then, is whether the requisite intent may be inferred from the content of the defendant's communication and the fact that he touched Kurlinkus' arm.

The defendant communicated twice with Kurlinkus. He stated, "How is it going?" and "I want to talk to you." Neither of these statements, standing alone, evidences an intent to harass or annoy. Similarly, Kurlinkus never called to Espinoza for help. Her lack of reaction indicates that the defendant's communication was not threatening enough to cause her to seek aid. When considered in light of the mild nature of the defendant's remarks, it is apparent that no intent can be inferred from the defendant's communication alone. Additionally, the evidence indicated that the defendant's presence in the restaurant at the time Kurlinkus was there was purely coincidental. Thus, there was no evidence of advance planning on the part of the defendant which would demonstrate intent. The encounter between Kurlinkus and the defendant occurred in a public place which would be accessible to potential witnesses, further negating any inference that the defendant intended to harass Kurlinkus.

Given the innocuous nature of the defendant's statements; the fact that the encounter between Kurlinkus and the defendant occurred by chance; the fact that the encounter occurred in a public place; and the evidence that Kurlinkus at no time called out for help, we find the evidence establishing intent was so unsatisfactory as to cause reasonable doubt as to the guilt of the accused.

We do not, by our decision today, find that a communication innocuous or nonthreatening on its face can never be the basis for a charge of harassment under section 32—4a. We find instead that under the totality of the facts and circumstances, the State failed to prove beyond a reasonable doubt that the defendant possessed the intent to harass or annoy Kurlinkus.

The defendant has raised several additional issues in this appeal.

Because we have found that the defendant's conviction must be reversed, we do not address these issues.

The judgment of the circuit court of Knox County is reversed.

Reversed.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:

I do not agree with the majority that the State failed to prove defendant's intent to harass or annoy Donna Kurlinkus, and therefore, I dissent.

The jury as the trier of fact is permitted to infer defendant's intent to commit the offense from the facts and circumstances surrounding the words and actions of the defendant. (*People v. Jones* (1981), 93 Ill. App. 3d 475, 417 N.E.2d 647; *People v. Mertens* (1979), 77 Ill. App. 3d 791, 396 N.E.2d 595.) The majority opinion seems to concentrate mainly on the words spoken by defendant without regard to all the accompanying circumstances, and by my view, the majority also engages in a selective distortion of the testimony of the witnesses.

The victim testified that she was an experienced MEG agent who had gone to the Taco House bar with a new MEG agent on an undercover assignment. The two agents were trying to arrange a drug "buy" that evening. Although the victim had been in the bar for about 45 minutes when she decided to go to the restroom, she had not seen defendant. She entered the enclosed hallway which led to two restrooms at the back of the barroom. She heard someone following her into the hallway, and when she turned around, she saw defendant. She testified that his tone of voice was threatening and that he "grabbed" her arm twice (not that he touched it). She stated that she was frightened by defendant but that her first concern was to protect the identity of the fellow agent who was accompanying her so that he could continue to work as an undercover agent. For that reason, she did not call for help or make a public commotion immediately after the incident. The victim also testified that she knew the bartender was the defendant's sister.

The majority opinion gives considerable weight to the fact that the encounter occurred in a public place and by chance, but the record indicates that the encounter actually took place in a secluded hallway, separated from the public room by a solid wooden door which opened inward and which defendant held closed. It appears the defendant

purposefully followed her into the hallway, and after she pulled away from him and entered the ladies' room, he waited about five minutes in the hallway for her to come out. When she did, he blocked the exit, grabbed her arm again, and said he wanted to talk to her. They struggled until she pushed him aside and exited the restroom area. Defendant's actions coupled with his words would seem to indicate an intent to harass or annoy the police agent who had been a witness against him in an earlier case.

After carefully reviewing the record, I am persuaded that the evidence was sufficient to sustain the jury verdict of guilty.