THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY BERG, Defendant-Appellant.

Second District   No. 2—90—0065

Opinion filed December 30, 1991.—Rehearing denied March 2, 1992.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, and Edwin R. McCullough, of Chicago, for appellant.

Dennis Schumacher, State's Attorney, of Oregon, and Richard E. Zulkey, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

A jury in the circuit court of Ogle County convicted defendant, Anthony Berg, of witness harassment (Ill. Rev. Stat. 1989, ch. 38, par. 32—4a). He appeals, contending that the evidence was insufficient to prove him guilty beyond a reasonable doubt.

Susan Courtney is a social worker for the Department of Children and Family Services (DCFS). On the morning of June 22, 1989, she testified regarding defendant in a child-custody hearing. After the hearing, she left the courtroom with co-worker Adrianne Riipi and intern Cynthia Nelson. Defendant approached the three as they were waiting for an elevator outside the courtroom.

Defendant stopped about five feet away and said, "Susan, why did you lie in court?" Courtney denied lying, but defendant repeated the allegation.

At that point, defendant stepped closer to Courtney and raised his voice. He said, "[Y]ou are going to be really sorry you said this. You are going to be really sorry." His voice continued to get louder, and he kept moving closer to Courtney. His fists were clenched, and he appeared very angry. He then started pointing at Courtney and said, "You are going to pay for what you said, and you are going to pay soon."

After he said this his girlfriend, Debbie Rasmussen, tried to persuade him to leave. Then James Cratty, a sheriff's deputy serving as a bailiff, escorted him out of the courthouse. As he was moving away, defendant said, "[S]omebody bigger than me is going to make you pay for this."

Courtney testified that her initial reaction to this incident was surprise and amazement and then she began to get scared. She returned to the courtroom where she had just testified and told Assistant State's Attorney Robin Minnis that defendant had threatened her. Minnis advised her to report the incident to the sheriff's department. Courtney then made out a report to Deputy Gregory Breitel.

On redirect examination, the prosecutor asked Courtney whether she left town for the weekend following the incident because she was afraid. Defense counsel objected on the ground that the question went beyond the scope of cross-examination, and the trial court sustained the objection. However, Riipi later testified without objection that Courtney did spend the following weekend out of town.

Riipi, Nelson and Cratty all gave substantially similar accounts of the incident outside the courtroom. Cratty testified that he wears a hearing aid and could not hear what was being said. However, he stated that defendant appeared angry, and Cratty was concerned that the situation could turn into a physical confrontation.

The provision which defendant was convicted of violating, section 32—4a of the Criminal Code of 1961, provides as follows:

> "A person who, with intent to harass or annoy one who has served as a juror or as a witness in a legal proceeding, because of the *** testimony of such witness, communicates directly or indirectly with the juror or witness in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury or damage to the property or person of such party or witness *** commits a Class 4 felony."
> (Ill. Rev. Stat. 1989, ch. 38, par. 32—4a.)

Defendant raises four separate issues, each challenging the sufficiency of the evidence to establish a particular element of the crime. Specifically, defendant contends that the evidence was insufficient to prove that (1) he had the requisite intent to harass Susan Courtney; (2) he conveyed a threat; and (3) the communication caused mental anguish to Courtney. Finally, defendant contends that even if the communication was a threat, it was made as a result of

passing anger and thus defendant lacked the requisite intent to harass.

Defendant's first contention is that the State failed to prove beyond a reasonable doubt that he had the requisite intent. In order to be convicted of witness harassment, the statute requires that the defendant intend to "harass or annoy" the witness. (*People v. Nix* (1985), 131 Ill. App. 3d 973, 975.) Intent may be inferred from the surrounding circumstances. *People v. Jackiewicz* (1987), 163 Ill. App. 3d 1062, 1065; *People v. Jones* (1981), 93 Ill. App. 3d 475, 479; 1 W. LaFave & A. Scott, Substantive Criminal Procedure, §3.5, at 316 (1986).

■ Defendant cites *People v. Nix* (1985), 131 Ill. App. 3d 973, in support of his contention that he lacked the requisite intent to harass or annoy Courtney. In *Nix*, the court reversed defendant's conviction of witness harassment. Defendant encountered the victim, a drug enforcement agent who had testified against defendant, outside the women's rest room of a restaurant. Defendant grabbed the victim's arm and said, "How is it going?" (131 Ill. App. 3d at 974.) The victim then locked herself in the women's room. When she emerged, defendant grabbed her again and said, "I want to talk to you." (131 Ill. App. 3d at 974.) The appellate court found that the meeting between defendant and the victim was purely a chance encounter. The fortuitous meeting, combined with defendant's inherently innocuous words, was insufficient to establish that defendant acted with the requisite intent to harass or annoy. 131 Ill. App. 3d at 975.

*Nix* is distinguishable from the instant case. It is not so clear that the encounter between defendant and Courtney was merely fortuitous. Although defendant argues that he merely "ran into" Courtney and her companions while they were waiting for an elevator, an equally plausible inference is that defendant was waiting for her. It appears that he approached her quickly and purposefully upon seeing her outside the courtroom and left only when requested to do so by a uniformed deputy. These facts do not compel the conclusion that the meeting was purely a chance encounter.

More importantly, defendant's words were not inherently innocuous, as were those in *Nix*. Defendant told Courtney that she would "be sorry" and that she would "pay for" her lies. These remarks are certainly more threatening in nature than Nix's remarks, "How is it going?" and "I want to talk to you."

Defendant points out that during the encounter, Courtney asked him, "Is that a threat?" and defendant responded "no." Courtney

testified that she asked the question, but did not recall defendant's response. She speculated that she probably missed it due to her surprise and the general confusion. In any event, defendant's one-word denial is not conclusive on the issue of intent. It was but one factor among all the facts and circumstances which the jury could consider.

Other facts also support the inference that defendant intended to harass or annoy the victim. Courtney testified that defendant was walking toward her and that his fist was clenched. Deputy Cratty, who could not hear the words, observed that the situation appeared volatile and saw fit to escort defendant from the courthouse. Defendant's girlfriend encouraged him to leave the area.

Defendant further objects that his statements such as "You're going to have to answer to someone bigger than me," refer to God and that Courtney was aware of this fact. Courtney, however, testified that it was only sometime later that she came to realize that "someone bigger than me" might refer to God. Moreover, defendant made this statement as Deputy Cratty was leading him away. Courtney speculated that defendant might have said this in an attempt to justify his previous statements once the deputy sheriff had intervened. Defendant's prior statements such as "you are going to pay soon" are not necessarily consistent with divine judgment and could be seen as implying a more immediate form of retribution.

Considering all the facts and circumstances, the jury could conclude beyond a reasonable doubt that defendant possessed the requisite intent to harass or annoy Courtney because of her testimony at the custody hearing.

Defendant's second and third arguments, which we consider together, are that the State failed to prove beyond a reasonable doubt either that defendant conveyed a threat or that he communicated with Courtney in such a way as to produce mental anguish or emotional distress.

■ The statute provides two alternative bases of liability for the offense of witness harassment. A person is guilty of witness harassment if, having the requisite intent, he (1) communicates with the witness in such a manner as to produce mental anguish or emotional distress *or* (2) conveys a threat of injury or damage to the person or property of the witness. (Ill. Rev. Stat. 1989, ch. 38, par. 32—4a.) Defendant contends that the evidence was insufficient to establish either of these alternatives.

The first alternative appears to be a subjective one, based on whether the communication in fact produced mental anguish or

emotional distress in the mind of the victim. In this regard, defendant points out that Courtney did not call for help during the encounter and admitted that she later realized that the words could be viewed in a nonthreatening context.

■ Initially, we note that the entire confrontation took place in a very short time span, apparently less than a minute. Courtney testified that her initial reaction was surprise and amazement. It is entirely possible that she never had time to overcome her original surprise before defendant was led away. Immediately after the incident, Courtney reported to Ms. Minnis that defendant had threatened her and filed a complaint with the sheriff's department. Moreover, Adrianne Riipi testified without objection that following the incident Courtney left town for the weekend.

Secondly, we note that Courtney testified that she realized only sometime after the incident that defendant's last remark to her might refer to God. She also stated that it appeared that defendant made this last statement only to provide an after-the-fact justification for his earlier remarks. This realization did not prevent her from reporting the incident or from leaving town for the weekend.

■ Defendant cites a number of cases from foreign jurisdictions in support of his contention that his statements did not constitute threats. These cases were decided under a number of different statutes and in any event hardly form an unbroken line of precedent. Compare *Nix*, 131 Ill. App. 3d 973; *People v. Todaro* (1970), 26 N.Y.2d 325, 325, 310 N.Y.S.2d 303, 304 (reversing conviction based on single statement, "I'll get you for this"); and *Commonwealth v. Sullivan* (1979), 269 Pa. Super. 279, 409 A.2d 888 (conviction reversed based on two threats to kill deputy sheriff), with *People v. Dorns* (1976), 88 Misc. 2d 1064, ____, 390 N.Y.S.2d 546, 546-47 (affirming conviction based on statements, "Who do you think you're playing with, bitch. I'll kill you"); *Commonwealth v. Ferrer* (1980), 283 Pa. Super. 21, 23, 423 A.2d 423, 424 (affirming conviction based on statement, "That conviction is going to cost you one of your fuckin kids, punk"); and *State v. Zeit* (1975), 22 Or. App. 480, 539 P.2d 1130 (affirming conviction based on 3 a.m. telephone calls threatening to kill victim or a family member).

We do not find these cases particularly helpful as they were decided under a variety of statutes which specify various elements for the offenses thereunder. To the extent a meaningful general principle can be derived from the cases it is that inherently innocuous statements or vaguely threatening statements, in the absence of additional circumstances indicating a present intention to carry out

the threat, are insufficient to support a conviction. Conversely, even a single threatening statement, together with circumstances which indicate the party making it is likely to carry out the threat, can support a conviction.

In the instant case, defendant's statements were sufficiently threatening and accompanied by sufficient corroborating circumstances to support the jury's verdict. Defendant admits that his words were more threatening than the innocent statements in *Nix*. Defendant stated without qualification that Courtney would "pay" for her "lies." He said this while moving toward her in an obviously agitated state with his fist clenched. The situation was so charged with danger that Deputy Cratty saw fit to escort defendant from the premises. Moreover, under the first alternative in the statute, defendant's statements and conduct did in fact cause Courtney mental anguish.

Defendant's statements and conduct were not so clearly threatening as those in *People v. Bemis* (1985), 127 N.H. 490, 503 A.2d 789, on which the State relies. In that case, the defendant punched and kicked the victim and threatened to break his arm if he testified against the defendant. (127 N.H. at 493, 503 A.2d at 791.) We hold, however, that defendant's statements and accompanying conduct were sufficient to support his conviction. We note that the statute requires only an intention to "harass or annoy" the victim, not to physically harm or even threaten the victim. We decline to read into the statute a requirement that the defendant specify what harm he intends to visit on the victim or accompany the threat with physical violence. We do not believe that such is the intent of the statute.

■ Defendant's final argument is that, even if his statements did constitute threats, they were made in a passing state of anger and, therefore, defendant lacked the requisite intent. This is substantially similar to defendant's first argument. We have already held that there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant purposely waited for Courtney to emerge from the courtroom and intentionally delivered his threatening remarks with the intent to annoy or harass.

This case is thus distinguishable from the cases which defendant cites, which involved only isolated comments obviously made in a state of transitory anger. (See *People v. Todaro* (1970), 26 N.Y.2d 325, 310 N.Y.S.2d 303; *Commonwealth v. Sullivan* (1979), 269 Pa. Super. 279, 409 A.2d 888.) Although *Sullivan*, which involved two separate threats to kill a peace officer, is somewhat difficult to har-

monize with other decisions in this area, we note that in that case defendant was convicted under a Pennsylvania statute prohibiting "terroristic threats" and which requires the making of a threat "to commit any crime of violence with intent to terrorize another." (*Sullivan*, 269 Pa. Super. at 281, 409 A.2d at 889.) This differs from the Illinois statute, which requires only an intention to "harass or annoy."

For the foregoing reasons, defendant's conviction of harassing a witness is affirmed.

Affirmed.

DUNN and UNVERZAGT, JJ., concur.