PEOPLE v TOWER

Docket No. 178856. Submitted October 3, 1995, at Lansing. Decided February 2, 1996, at 9:10 A.M.

David A. Tower was charged in the 71-B District Court with obstruction of justice after he, while being escorted back to jail through a courthouse hallway, told a witness set to testify against Tower's cellmate at the cellmate's preliminary examination, "You're making a mistake." The court, Edward M. Keller, J., after a preliminary examination, dismissed the charge against Tower. On appeal, the Tuscola Circuit Court, Patrick R. Joslyn, J., reinstated the charge. Tower appealed by leave granted.

The Court of Appeals *held:*

An attempt to dissuade a witness, by threats and coercion, from testifying constitutes obstruction of justice. In this case, the statement at issue was innocuous. There was no evidence that Tower sought out the witness, that any physical gesture showed that the statement was intended as a threat, or that the statement contained any reference to the fact that the witness was scheduled to testify. The totality of the circumstances did not reasonably support an inference that Tower intended to dissuade the witness from testifying.

Reversed.

SMOLENSKI, J., dissenting, stated that Tower's statement to the witness and the circumstances under which the statement was made indicated that Tower, with the intent to obstruct justice, dissuaded or attempted to dissuade, by means of persuasion, advice, or threats, the witness from testifying at a judicial proceeding.

CRIMINAL LAW — OBSTRUCTION OF JUSTICE — DISSUADING WITNESSES FROM TESTIFYING.

An attempt to dissuade a witness, by threats and coercion, from testifying at a criminal proceeding constitutes obstruction of justice; intent to dissuade is not established where an innocu-

REFERENCES

Am Jur 2d, Obstructing Justice §§ 60-62.
See ALR Index under Obstructing Justice.

ous statement is made during a chance encounter at a public place.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James R. Reed,* Prosecuting Attorney, and *Mark E. Reene,* Assistant Prosecuting Attorney, for the people.

*David G. Myers,* for the defendant.

Before: WAHLS, P.J., and SMOLENSKI and R. C. KAUFMAN,* JJ.

WAHLS, P.J. Defendant's delayed application for leave to appeal was granted in this case to determine whether the circuit court erred in reinstating a common-law felony charge of obstruction of justice, MCL 750.505; MSA 28.773, previously dismissed by the district court at defendant's preliminary examination. We reverse.

The sole witness who testified at defendant's preliminary examination was Alva Hayes, a "turnkey" at the Tuscola County Sheriff's Department. Following defendant's waiver of preliminary examination in a separate case, Hayes handcuffed defendant and they began walking down the hallway outside the courtroom. As Hayes and defendant walked by Swoffer,[1] defendant said to Swoffer, "You're making a mistake." Swoffer was scheduled to testify against Allen Zimmerman, who was incarcerated with defendant in cell A3 at the county jail, in Zimmerman's preliminary examination. Defendant was six to eight inches from Swoffer when this statement was made. Hayes returned defendant to the jail without further incident.

A defendant must be bound over for trial if

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] Hayes did not know Swoffer's first name.

evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator. *People v Premen,* 210 Mich App 211, 218; 532 NW2d 872 (1995). There must be some evidence from which each element of the crime may be inferred. *Id.* Probable cause that the defendant has committed the crime charged is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged. *People v Woods,* 200 Mich App 283, 288; 504 NW2d 24 (1993). This Court's review of the circuit court's analysis of the bindover process is de novo. *People v McBride,* 204 Mich App 678, 681; 516 NW2d 148 (1994). We must determine if the magistrate committed an abuse of discretion in determining whether there was probable cause to believe that the defendant committed the offense charged. *Id.*

Obstruction of justice is generally understood as an interference with the orderly administration of justice, and it embraces a category of separate offenses. *People v Thomas,* 438 Mich 448, 455, 457; 475 NW2d 288 (1991). The coercion of witnesses is one of the more common examples of this crime. *People v Ormsby,* 310 Mich 291, 300; 17 NW2d 187 (1945). This crime is complete with the attempt through threats and coercion to dissuade a witness from testifying. *People v Coleman,* 350 Mich 268, 274; 86 NW2d 281 (1957). Whether the attempt succeeds in dissuading the witness is immaterial. *Id.,* p 281. Words alone may be sufficient to constitute the crime. *Id.,* p 280.

Here, there was not probable cause to believe that defendant intended to commit obstruction of justice. Accomplishment of this crime requires a

specific intent. As the Court explained in *Coleman,
id.,* p 278:

> If the acts of the accused, taken by themselves,
> are unambiguous, and cannot, in reason, be re-
> garded as pointing to any other end than the
> commission of the specific crime in question, then
> they constitute a sufficient *actus reus.* In other
> words, his acts must be *unequivocally referable* to
> the commission of the specific crime. They must,
> as the late Sir John Salmond said, "speak for
> themselves." [Emphasis in original.]

In determining whether defendant's statement
was "unequivocally referable" to the commission
of obstruction of justice, it is helpful to compare
the conduct here to that considered in other cases
where the alleged threat was solely verbal. In
*Coleman, id.,* p 270, the defendant was charged
with a violation of the small loan act. He discov-
ered that one of the witnesses against him, Wil-
liam Jordan, was having an affair with a younger
woman named Jefferson. *Id.* The defendant dis-
patched someone to find Jordan, and tell him that
"if he [Jordan] didn't show up at the trial his wife
wouln't [sic] find out that she [Jefferson] was run-
ning with him."[2] *Id.* The specific threat and the
reference to testifying at trial distinguish the facts
in *Coleman* from this case.

Turning to other jurisdictions, in *United States
v Jackson,* 168 US App DC 198; 513 F2d 456
(1975), the court found that the following phrases
showed a reasonable tendency to intimidate a

[2] All may have gone well for defendant Coleman except that his
agent, Charles Goldsborough, could not find Jordan because the
address numbers on that street had changed. *Coleman, supra,* p 271.
Goldsborough decided to go to the local police department to look at a
telephone directory. *Id.,* pp 271-272. A detective noticed that he had
just been to the addresses contained on Goldsborough's list. *Id.,* p 272.
Upon questioning Goldsborough, the detective discovered the crime.
*Id.*

witness: "If I get a day for something I didn't do, I will [k]ill you and your father"; "I should drag you out on the street and whip you"; and "If I had my pistol, I'd shoot you right now." Similarly, in *People v Thomas,* 83 Cal App 3d 511, 513; 148 Cal Rptr 52 (1978), the defendant pointed to a woman who was about to testify against the defendant's mother, and stated "that he was going to kill my mother-fucking ass and he was going to fuck me up," and, "You put my mother in jail, you had my mother picked up." Finally, in *People v Berg,* 224 Ill App 3d 859, 860; 166 Ill Dec 691; 586 NE2d 649 (1991), the defendant approached a social worker who was scheduled to testify regarding the defendant in a child-custody hearing. The defendant asked the social worker, "Susan, why did you lie in court?" When the social worker denied that she had lied, the defendant stated, "You are going to be really sorry you said this. You are going to be really sorry." The defendant moved closer, clenched his fists, pointed to the social worker, and said, "You are going to pay for what you said, and you are going to pay soon." *Id.*

In contrast to those statements, the statement at issue here, standing alone, is innocuous. There is no evidence that defendant sought out Swoffer, or that any physical gesture showed that the statement was intended as a threat. Finally, the statement contains no reference at all to the fact that Swoffer was scheduled to testify in a criminal proceeding. We agree with the California court that stated that there is no "talismanic requirement that a defendant must say, 'Don't testify' or words tantamount thereto, in order to commit the charged offenses." *Thomas, supra,* p 513. Nevertheless, the totality of the circumstances here does not reasonably support an inference that defen-

dant intended to dissuade Swoffer from testifying. *Coleman, supra,* p 278.

This case is most analogous to *People v Nix,* 131 Ill App 3d 973; 87 Ill Dec 95; 476 NE2d 797 (1985). In *Nix,* the defendant was convicted under a statute that forbade the harassment of witnesses. The defendant encountered a woman in a restaurant who had testified against him in an earlier trial. The defendant grabbed the woman's arm and asked, "How is it going?" The woman entered the bathroom and locked the door. When the woman reemerged, the defendant again grabbed her arm, and stated, "I want to talk to you." *Id.,* p 974. The court found that the totality of the circumstances —the innocuous nature of the defendant's statements, the fact that the encounter occurred by chance, the fact that the encounter occurred in a public place, and evidence that the woman never cried out for help—raised a reasonable doubt regarding the defendant's intent. *Id.,* p 799. Not only are each of the factors in *Nix* present here,[3] but the circumstances negating intent are even stronger here because there was no physical contact accompanying the allegedly threatening words.

Ordinarily, a defendant's intent is a question of fact to be inferred from the circumstances by the trier of fact. *People v Turner,* 213 Mich App 558; 567; 540 NW2d 728 (1995). Here, however, the circumstances are not sufficiently strong in themselves to warrant a cautious person to believe that defendant intended to dissuade Swoffer from testifying at Zimmerman's preliminary examination. *Coleman, supra,* p 278. Accordingly, the circuit court erred in reinstating the common-law felony of obstruction of justice. *Woods, supra,* p 288.

[3] We do not agree that the victim's reaction to the alleged threat is relevant. *Coleman, supra,* p 281.

Reversed. We do not retain jurisdiction.

R. C. KAUFMAN, J., concurred.

SMOLENSKI, J. *(dissenting).* I respectfully dissent.
The complaint and warrant charged that on or
about September 10, 1993, defendant

> did commit the crime of obstruction of justice by
> interference with the orderly administration of the
> law, obstructing or interfering with a proper and
> legitimate criminal investigation; contrary to MCL
> 750.505; MSA 28.773.

At defendant's September 24, 1993, preliminary
examination, the sole witness to testify was Alva
Hayes, a "turnkey" at the Tuscola County Sheriff's
Department. Hayes' testimony can be summarized
as follows: On the morning of September 10, 1993,
defendant and Allen Zimmerman were both incar-
cerated in cell A3 of the A wing at the county jail.
Defendant had previously been incarcerated in cell
B5 of the county jail but had been transferred to
cell A3 because "he wasn't getting along with the
guy in B5." Zimmerman had never been incarcer-
ated in the jail's B wing. Hayes did not know how
long defendant and Zimmerman had been incar-
cerated together in cell A3.

Hayes removed defendant and Zimmerman from
cell A3, had them get dressed, placed them in a
holding cell, and subsequently brought them to the
district court where defendant was scheduled to
waive a preliminary examination in a pending
case and Zimmerman was scheduled for a prelimi-
nary examination in a pending case. Upon arriv-
ing at the district court, defendant and Zimmer-
man sat beside each other in the jury box.

After defendant signed his waiver, Hayes and
defendant left the courtroom. Hayes put handcuffs

on defendant, and they began walking down the
hallway outside the courtroom. Standing beside
each other in this hallway were Deputy Mike Pine
and Swoffer. Hayes did not remember Swoffer's
first name because he did not "have that much to
do with him. He's on work site and everything."
Swoffer was scheduled to testify against Zimmer-
man at Zimmerman's preliminary examination.

As Hayes and defendant walked by Pine and
Swoffer, defendant said to Swoffer "You're making
a mistake." Defendant was six or eight inches
from Swoffer when this statement was made. Dur-
ing cross-examination, the following exchange oc-
curred:

> [*Defense Counsel*]: And you're sure what [defen-
> dant] said wasn't, "You're making a big mistake"?
> [*Hayes*]: It's very possible. It came very fast and
> the inference was made, and I told him to shut up
> very quickly. You don't hear every syllable, or
> whatever. "You're making a mistake, a big mis-
> take, making a mistake," was basically what I had
> heard.

Hayes then returned defendant to the jail with-
out further incident. Hayes did not know whether
Swoffer testified at Zimmerman's preliminary ex-
amination.

Hayes admitted that on the morning this inci-
dent occurred he was not in the process of investi-
gating any crime because he was not a police
investigator. Hayes did not know of any type of
prior relationship between defendant and Zimmer-
man. Hayes had not overheard any conversations
or seen any messages passed between defendant
and Zimmerman. Hayes was aware that Swoffer
had been assaulted in jail by a person named Greg
Campbell, but did not know when this assault
occurred.

Following Hayes' testimony, the prosecution relied on *People v Ormsby*, 310 Mich 291; 17 NW2d 187 (1945), to argue that defendant had obstructed justice by interfering with obtaining the testimony of a witness. Following further argument by both parties, the district court dismissed the charge:

> There is no evidence offered here that the defendant had an intent to interfere with the, with an investigation, or obstruct justice, or that he did do so. The words he used are capable of many interpretations. They don't appear to be threatening in nature. I understand how a reasonable suspicion by an officer could cause a concern in that regard, or that this might be part of an attempt to interfere with an investigation. However, there's no evidence here any investigation was interfered with, that the defendant intended to do so, or that the words that were spoken would be calculated to interfere with an investigation. I don't think there's anything improper, per se, about any person telling another person, "You're making a mistake," in considering testifying, if that's what we presume he meant by that, and even that requires a fair amount of speculation.
>
> Without a substantial amount of speculation, I can't make the leap from the words spoken to the fact that that amounts to an obstruction of justice. And I'm going to dismiss the case.

The prosecution appealed to the circuit court. In its brief on appeal to the circuit court, the prosecution again argued that defendant had obstructed justice by interfering with obtaining the testimony of a witness. The circuit court subsequently reinstated the charge. Although no transcript of the circuit court proceedings have been submitted to this Court, the circuit court apparently based its decision on its determination that the evidence presented at the preliminary examination was

sufficient to establish probable cause, as evidenced
by its June 1994 order reinstating the charge:

> [T]he charge of obstruction of justice, which is
> contrary to MCL 750.505; MSA 28.773, is hereby
> reinstated and this matter is forwarded to the 54th
> Judicial Circuit Court based on the requisite show-
> ing by the People of the State of Michigan at the
> previously held preliminary examination that
> there was probable cause to believe the offense was
> committed and probable cause to believe the defen-
> dant committed the offense.

On appeal, defendant argues that the circuit
court erred in reinstating the charge. Defendant
contends that the district court did not abuse its
discretion in dismissing the obstruction of justice
charge because

> the evidence introduced by the prosecution at the
> preliminary examination failed to establish that
> [defendant] committed the crime of obstruction of
> justice by interference with the orderly adminis-
> tration of the law, failed to establish that [defen-
> dant] obstructed or interfered with a proper and
> legitimate criminal case investigation, and failed
> to establish anything more than the fact that
> [defendant] told someone he was making a mis-
> take.

Where the issue raised on appeal concerns the
factual sufficiency of the evidence to bind over the
defendant, this Court applies the same standard of
review as applied by the circuit court in reviewing
the district court's decision. *People v Thomas,* 438
Mich 448, 452; 475 NW2d 288 (1991); *People v
Neal,* 201 Mich App 650, 654; 506 NW2d 618
(1993). Thus, in assessing the circuit court's deci-
sion to reinstate the charge against defendant in
this case, this Court must determine whether the

district court abused its discretion in concluding that there was not probable cause to believe that defendant committed obstruction of justice. *Thomas, supra; Neal, supra.*

A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed the crime. MCL 766.13; MSA 28.931; *People v Premen,* 210 Mich App 211, 218; 532 NW2d 872 (1995). The prosecution is not required to prove each element of the crime beyond a reasonable doubt. *People v Whipple,* 202 Mich App 428, 432; 509 NW2d 837 (1993). In making its determination, the district court must examine the entire matter. *People v King,* 412 Mich 145, 154; 312 NW2d 629 (1981).

At common law, the offense of obstruction of justice was not one offense but many offenses. *Thomas, supra* at 450, 458. Thus, in order to sustain a charge of common-law obstruction of justice, common-law precedent for the specific offense charged as obstruction of justice must exist. *Id.* At common law, dissuading or preventing, or attempting to dissuade or prevent, a witness from testifying with the intent to obstruct justice constituted one of the many offenses known as obstruction of justice. *People v Davis,* 408 Mich 255, 288, n 11; 290 NW2d 366 (Levin, J.); *People v Coleman,* 350 Mich 268; 86 NW2d 281 (1957); *People v Boyd,* 174 Mich 321; 140 NW 475 (1913).

The deterrence of the witness must be accomplished by unlawful means. *Coleman, supra* at 274-275; *Boyd, supra* at 325-326. However, words, including persuasion, advice, or threats, as well as physical violence, can constitute the unlawful deterrence. *Coleman, supra* at 280; 67 CJS, Obstructing Justice, § 16, p 150. "That words themselves

may be overt acts under some circumstances, in fact overt acts sufficient to constitute crimes, is well settled." *Coleman, supra* at 280. In *Coleman,* our Supreme Court quoting *Armstrong v Vicksburg, S & P R Co,* 46 La Ann 1448, 1463; 16 So 468 (1894), explained:

> "It is a mistake, however, to suppose that in order to constitute force it is always necessary that actual active physical force be applied, or that to constitute 'threats' violent language must be employed. Any conduct, in the connection we are now dealing with the word, which would place the officer executing the process of the court in bodily fear or terror is 'that force' contemplated by the law, while 'threats' may be communicated by signs or by actions as fully and thoroughly as by word of mouth"

> As we pointed out in [*Boyd*], *supra, . . .* the substantive offense, punishable at common law, is the mere attempt to persuade a witness not to testify. The law does not require that the attempt be successful or even that it be such as would be the most promising. Attempts may vary in means or vigor, and success may well depend upon a host of factors, such as the violence with which the threat is delivered, or its accompaniment by force or show thereof. Witnesses, moreover, vary in courage. A threat that would be brushed aside by one of the utmost resolution might well cause one of weaker will to hesitate or falter. Yet the court's search for truth cannot be restricted to the bold and courageous. It must comprehend all kinds and conditions of men. We do not weigh in delicate scales the force exerted or the terror inspired. Enough for us that an attempt is made. If successful, the court's function has been defeated by private aggression. If unsuccessful the orderly processes of society have been challenged, the intimidation of the citizen sought, and effort made to substitute the fear of violence or disgrace for the fairness of due process. The attempt itself is a

criminal act. That it was not successful makes it no less reprehensible, no less criminal, no less punishable. [*Id.* at 280-281.]

In this case, the district court focused its analysis on the words spoken by defendant:

I don't think there's anything improper, per se, about any person telling another person, "You're making a mistake," in considering testifying, if that's what we presume he meant by that, and even that requires a fair amount of speculation.

However, in looking at the entire record, I note that defendant had been incarcerated with Zimmerman and transported with Zimmerman to the district court, where he sat beside Zimmerman. Swoffer had some connection to the jail as evidenced by Hayes' testimony that he, a jail employee, did not have much to do with Swoffer because Swoffer was "on work site," and that Swoffer had been assaulted in the jail. The defendant need not have absolute knowledge that the person is expected to testify. 67 CJS, p 149. Rather information or a reasonably founded belief is sufficient. *Id.* Such knowledge or belief may be inferred from the circumstances. *Id.* Thus, a reasonable inference arises from these circumstances that defendant was aware that Swoffer was going to testify against Zimmerman.

While Swoffer was waiting outside the courtroom to testify against Zimmerman, defendant told Swoffer he was "making a mistake" while only six to eight inches from Swoffer. Hayes testified that when he heard defendant's statement "the inference was made." Thus, in light of the location where the statement was made and defendant's proximity to Swoffer, as well as the content of the statement, I conclude that evidence was

presented that defendant, with the intent to obstruct justice, dissuaded or prevented, or attempted to dissuade or prevent, through persuasion, advice, or threats, Swoffer from testifying at a judicial proceeding. *Davis, supra* (LEVIN, J.); *Coleman, supra* at 280; 67 CJS, p 150. Whether Swoffer actually testified at Zimmerman's preliminary examination is irrelevant. *Coleman, supra* at 281. The district court abused its discretion in focusing too narrowly only on the words spoken by defendant, rather than evaluating defendant's words in light of the surrounding circumstances. *King, supra.*

Moreover, I note that the district court stated as follows:

> The words [defendant] used are capable of many interpretations. They don't appear to be threatening in nature. I understand how a reasonable suspicion by an officer could cause a concern in that regard, or that this might be part of an attempt to interfere with an investigation.

Where there is credible evidence presented to both support and negate the existence of an element of the crime, a factual question exists that should be left to the jury. *Neal, supra* at 655.

I would affirm the circuit court's reinstatement of the charge of obstruction of justice.