(No. 106200.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL P. CARDAMONE, Appellant.

*Opinion filed March 19, 2009.*

Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Mark G. Levine, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Joseph E. Birkett, State's Attorney, of Wheaton (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, Michael Cardamone, was convicted of harassment of a witness in violation of section 32—4a of the Criminal Code of 1961 (720 ILCS 5/32—4a (West 2004)). The appellate court affirmed defendant's conviction (379 Ill. App. 3d 656), and defendant appealed to this court. Before this court, defendant argues that the

State failed to prove he was guilty beyond a reasonable doubt because it failed to establish that the target of his harassment experienced a level of distress akin to a threat of physical damage to person or property. Defendant also asserts that the State failed to establish defendant's intent to communicate with his target. We granted defendant's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). We now affirm defendant's conviction.

## BACKGROUND

Defendant was charged with and convicted of two counts of harassment of a witness in violation of section 32—4a of the Criminal Code (720 ILCS 5/32—4a (West 2004)). The first count of harassment of a witness was based on the target, Teresa Eason, being a witness in another criminal proceeding against defendant. The second count of harassment was based upon Eason's familial relationship with a victim in the other criminal proceeding. Defendant was also charged with and convicted of three counts of disorderly conduct in violation of section 26—1(a)(4) of the Criminal Code for filing a false police report. 720 ILCS 5/26—1(a)(4) (West 2004). The first count of disorderly conduct was predicated upon defendant's reporting Eason was committing the offense of driving while under the influence of alcohol. The second count was based on defendant's simultaneous report that Eason was illegally transporting alcoholic liquor. The third count was based on defendant's accusation that Eason was guilty of improper lane usage. Before this court, defendant contests only his conviction for harassment of a witness. Defendant has not appealed his conviction for disorderly conduct. All of the charges were based upon the same act that defendant committed on July 7, 2004.

On the morning of July 7, 2004, defendant and Eason both attended a hearing in another criminal proceed-

ing where defendant was accused of wrongdoing. Eason was both a potential witness and the mother of an alleged victim in this other case.

After the hearing, defendant and Eason both took the same road to get from the courthouse to their respective homes. Defendant found himself immediately behind Eason as they drove. Eason testified that she noticed defendant in the car behind her and that this made her uncomfortable. Defendant and his wife testified that Eason cut them off several times as they tried to pass her. However, Eason testified that she drove steadily and did not speed or swerve.

Shortly after Eason and defendant turned south onto Eola Road, defendant phoned 911 to report Eason as a drunk driver. Defendant told the 911 operator that he was calling because he believed someone was drinking and driving. Defendant gave the operator his location as well as a description of Eason's vehicle and license plate number. The operator asked defendant, "Did you see them drinking or you just suspect it?" Defendant replied, "Yeah, I saw a bottle in their car actually, it was that was so weird [*sic*], half covered up."

Shortly thereafter, Eason was stopped by Officer Michael Auld of the Aurora police department. Eason testified that her "heart dropped" when she was pulled over, "like it always does when a police officer—even when you know you didn't do anything wrong, you think what did I do?" Eason testified that it was "nerve wracking."

Auld explained to Eason that she had been stopped because 911 had received a report that she was intoxicated. Upon hearing this explanation, Eason stated that she felt "quite a bit of anger that this was happening." Eason also told Auld that defendant had made the call to 911 as he was "the only one who would have called the police." Eason offered to let the officer search her entire

car. Though Auld declined to search the vehicle, Eason did open the sliding door of her minivan to allow the officer to look inside.

At trial, Auld testified that after he received the dispatch from 911, he moved to intercept Eason's minivan. The officer testified that based on the license plate number given to the 911 operator, he was able to see Eason's address. Because Eason was heading toward her home, he positioned himself such that Eason would have to pass him on her way to her home. When Eason passed Auld, he took time to observe Eason's driving. He did not notice any traffic violation or erratic driving. However, based upon the 911 call, he stopped Eason.

Auld further testified that when he spoke with Eason, he did not notice any signs of intoxication or drinking. Her speech was not slurred, her eyes were not glassy, and she did not smell of alcohol. When invited to search the vehicle, the officer declined, but testified that he leaned through the sliding door and looked between the driver's and front passenger's bucket seats and under the seats from the rear to try and find the container defendant alleged he had seen. Auld stated that he saw no beverage container of any kind, let alone one that was "half covered up." Thereafter, Auld released Eason without citation or further incident.

Following a bench trial, the trial court found defendant guilty of all counts. In reaching its verdict on the disorderly conduct charges, the trial court stated that the evidence was sufficient to prove that defendant "made a false report as outlined in counts 2, 3 and 4 knowing there was no reasonable grounds for doing so."

In finding the defendant guilty of harassment of a witness, the trial court noted that Eason "was expected to be a witness or was the family member of a potential witness in the case against defendant." The court found that defendant indirectly communicated with Eason

"through the use of police authority." The trial court further found that defendant specifically intended to annoy Eason. The trial court summarized its findings when it stated that "defendant made a false report as to the driving and that he did so knowing [Eason] was a witness or a family member of a witness, no other purpose other than to harass or annoy [Eason] can be concluded." Finally, in determining whether Eason suffered emotional distress, the court adopted the definition of harassment found in the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2004)). The Domestic Violence Act defines harassment as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2004). Under this standard, the court held that

"defendant's conduct was deliberate and with the intent to harass or annoy [Eason]. She certainly suffered some emotional distress by his conduct; being stopped by the police without cause, being detained even for a short time without any reasonable articulable suspicion of criminal conduct, having her car searched, all are actions which would make a person upset, anxious and certainly uncomfortable."

Thus, the trial court concluded that there was "sufficient evidence to establish defendant's guilt beyond a reasonable doubt" on the witness harassment counts.

Defendant appealed his conviction on the witness harassment counts. 379 Ill. App. 3d 656. In the appellate court, defendant asserted two reasons why the trial court erred in finding him guilty. First, defendant asserted that "the State failed to prove beyond a reasonable doubt that the traffic stop produced in Eason's mind the requisite mental anguish or emotional distress." 379 Ill. App. 3d at 663. Second, defendant asserted that "the evidence was insufficient to establish that he com-

municated with Eason." 379 Ill. App. 3d at 667-68. The appellate court affirmed defendant's conviction. 379 Ill. App. 3d at 669.

Defendant appealed to this court raising the same two issues he presented to the appellate court. We granted defendant's petition and for the reasons that follow affirm the judgment of the trial and appellate courts.

## ANALYSIS

### I. The Requisite Level of Emotional Distress

Defendant's first argument is that his conviction should be overturned because the State did not present any evidence that the level of distress experienced by Eason was akin to "a threat of injury or damage to her person or property."

In assessing whether the evidence was sufficient to sustain a verdict, a reviewing court's inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.)" *People v. Bush*, 214 Ill. 2d 318, 326 (2005), quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under this standard, "a reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Bush*, 214 Ill. 2d at 326, citing *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

However, in this case, before this court can determine whether the evidence is sufficient to uphold defendant's conviction, we must first determine what level of distress the witness harassment statute requires. This presents a question of statutory interpretation. Questions of statutory interpretation are reviewed *de novo. People v. Brown*, 229 Ill. 2d 374, 382 (2008).

The witness harassment statute provides that a

"person who, with the intent to harass or annoy one who *** is serving or who is a family member of a person who *** is serving *** as a witness, or who may be expected to serve as a witness in a pending legal proceeding, *** because of the testimony or potential testimony of the witness or person who may be expected *** to serve as a witness, communicates directly or indirectly with the *** witness or person who may be expected *** to serve as a witness, or family member of a *** witness or person who may be expected *** to serve as a witness in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury or damage to the property or person of any *** witness or person who may be expected *** to serve as a witness commits a Class 2 felony." 720 ILCS 5/32—4a(a) (West 2004).

The principles of statutory interpretation are familiar. The reviewing court's objective in construing a statute is to give effect to the legislature's intent. *In re Madison H.*, 215 Ill. 2d 364, 372 (2005). Accordingly, we consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008), citing *People v. Jones*, 223 Ill. 2d 569, 581 (2006). When the statutory language is clear and unambiguous, it must be given effect without resort to other tools of interpretation. *Christopherson*, 231 Ill. 2d at 454-55.

In *People v. Butler*, the appellate court, in the course of rejecting a defendant's challenge to the witness harassment statute's constitutionality, had the opportunity to address the purpose of the statute. *People v. Butler*, 375 Ill. App. 3d 269 (2007). The appellate court noted that the purpose of the statute was "protecting witnesses and jurors from being hassled because of their assistance with daily courtroom proceedings." *Butler*, 375 Ill. App. 3d at 274.

With that purpose in mind, the statute provides two bases of liability for the offense of witness harassment. First, a defendant is guilty of witness harassment if, having the requisite intent, he communicates with the witness "in such manner as to produce mental anguish or emotional distress." 720 ILCS 5/32—4a(a) (West 2004). Second, the statute provides that a defendant is guilty of witness harassment if the defendant "conveys a threat of injury or damage to the property or person" of any witness. 720 ILCS 5/32—4a(a) (West 2004). See also *People v. Berg*, 224 Ill. App. 3d 859, 863 (1991) (noting the two bases of liability under the statute). It is uncontested that defendant was convicted on the first of these two bases of liability.

The statutory language makes no reference to a requisite level of emotional distress. Instead, the statute states that when a defendant with the "intent to harass or annoy" a person protected by the statute communicates with this person—directly or indirectly—"in such manner as to produce mental anguish or emotional distress," the defendant is guilty of a Class 2 felony. 720 ILCS 5/32—4a(a) (West 2004). Thus, the statute does not include any adjectives, such as "severe" or "extreme," that would qualify or quantify what kind or level of distress or anguish is required.

Because the statute does not provide a definition for "emotional distress" or "mental anguish," we assume that the legislature intended the terms to have their ordinary and popularly understood meanings. It is appropriate to employ the dictionary as a resource to ascertain the meaning of undefined terms. See *People v. Beachem*, 229 Ill. 2d 237, 244-45 (2008).

Black's Law Dictionary defines "mental anguish" and "emotional distress" as synonymous phrases. See Black's Law Dictionary 1007 (8th ed. 2004) (directing the reader to see "emotional distress" for a definition of

"mental anguish"). "Emotional Distress" is defined as a "highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct." Black's Law Dictionary 563 (8th ed. 2004). Thus, the reaction Eason testified as having suffered—stomach dropping, nerve-racking, wondering what she had done wrong, knowing that she had not done anything wrong, and anger—are included within the scope of this definition.

However, despite the plain language of the statute, defendant encourages this court to adopt a narrower definition of mental anguish and emotional distress. Defendant cites *People v. Parkins*, 77 Ill. 2d 253 (1979), and its progeny to support this position.[1] Under this line of cases the phrase "mental anguish or emotional distress" takes on a more restrictive meaning in light of the "threat of injury" language that follows the emotional distress clause. Defendant asserts that this court should adopt the rationale of the *Parkins* line and, thereby, find that Eason did not suffer sufficient emotional distress under the statute.

In *Parkins*, this court considered the meaning of the terms "abuse" and "harass" as they were used in the telephone harassment statute.[2] *Parkins*, 77 Ill. 2d at 257-58. The telephone harassment statute criminalized the making of " 'a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number.' " *Parkins*, 77 Ill. 2d at 255, quoting Ill. Rev. Stat. 1977, ch. 134, par. 16.4—1(2). Thus, in *Parkins*, the prohibited conduct was criminalized

---

[1] All of the cases in this line are based on arguments that the various statutes are unconstitutional for being either vague or over broad. This argument is not presented in the present case.

[2] The telephone harassment statute was codified as Ill. Rev. Stat. 1977, ch. 134, par. 16.4—1(2). After Illinois recodified the statutes, the statute was codified as 720 ILCS 135/1—1 (West 2000).

regardless of who placed the call or who received the call. In *Parkins*, this court was particularly concerned about the effect that a broad interpretation of the terms "abuse" and "harass" could have on otherwise protected speech. *Parkins*, 77 Ill. 2d at 255. Therefore, to avoid finding the telephone harassment statute unconstitutional on overbreadth grounds, the court invoked the maxim *noscitur a sociis* and held that the terms "abuse" and "harass" took "color from the word 'threaten' " and acquired a more restricted meaning. *Parkins*, 77 Ill. 2d at 257-58.

Despite the limited nature of the holding in *Parkins*, the logic of that case was extended by the appellate court to the present statute in *People v. Calvert*, 258 Ill. App. 3d 504 (1994).

In *People v. Calvert*, the appellate court cited to *Parkins* to conclude that the witness harassment statute was valid as it was not unconstitutionally vague. *People v. Calvert*, 258 Ill. App. 3d 504, 512 (1994). The *Calvert* court noted that the prohibited conduct is "couched in language which is as precise as possible, albeit lacking mathematical precision." *Calvert*, 258 Ill. App. 3d at 512. The court went on to reason that the "intent to harass or annoy is lent further meaning by the use of the term 'threat.' " *Calvert*, 258 Ill. App. 3d at 512, citing *Parkins*, 77 Ill. 2d at 257-58.

Significantly, the appellate court in *Calvert* adopted and incorporated the *Parkins* decision—which dealt with an unrelated statute—without discussion or comment as to either the limited nature of *Parkins* or the similarities and differences between the telephone harassment statute and the present statute.

Defendant also cites *People v. Nix*, to support his narrow interpretation of the statute. *People v. Nix*, 131 Ill. App. 3d 973 (1985). In *Nix*, the appellate court held that a defendant's grabbing a witness's arm twice and asking

her "[h]ow is it going" and saying "I want to talk to you" was not sufficient to support a conviction for witness harassment. *Nix*, 131 Ill. App. 3d at 975. The court in *Nix* specifically held that given the

> "innocuous nature of the defendant's statements; the fact that the encounter *** occurred by chance; the fact that the encounter occurred in a public place; and the evidence that [the victim] at no time called out for help, we find the evidence establishing intent was so unsatisfactory as to cause reasonable doubt as to the guilt of the accused." *Nix*, 131 Ill. App. 3d at 975.

Defendant analogizes *Nix* and the present case, noting that defendant's presence on the road at the same time as Eason was a chance encounter in a public place.

However, *Nix* is distinguishable from the present issue, as the question in *Nix* was whether the defendant's conduct was sufficient to prove that he had the intention to harass or annoy the victim, not the level of anguish that he was required to inflict. *Nix*, 131 Ill. App. 3d at 975. Furthermore, unlike in the present case, the defendant's conduct in *Nix* could only be described as innocuous because the defendant had been acquitted of the underlying charges of battery and aggravated battery of the victim. *Nix*, 131 Ill. App. 3d at 974. In the present case, defendant was convicted of disorderly conduct in filing a false police report and this conviction has not been appealed. Therefore, defendant's underlying conduct cannot be described as "innocuous" in the present case.

The cases cited by defendant are not compelling in light of the purpose and plain meaning of the statute. The statute does not contain any limiting language or exceptions, and the court does "not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007), citing *People v. Martinez*, 184 Ill. 2d 547, 550 (1998). The

statute was designed to protect witnesses and jurors from being mistreated because of their involvement in courtroom proceedings. See *Butler*, 375 Ill. App. 3d at 274. Therefore, we reject defendant's argument and find that the statutory language encompasses negative emotional states that are not necessarily linked to fear of harm to either the person or property of a person protected under the statute.

Having found that the statute incorporates a more expansive definition of "emotional distress" than defendant contends, we likewise find that the State has met its burden of proof.

## II. The Intent to Communicate

Defendant also contends that his conviction should be overturned because the State failed to establish that he "intended his 911 call to communicate with [Eason], for any purpose."

This argument presents a question of fact. As stated above, a question of fact is reviewed to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.)" *Bush*, 214 Ill. 2d at 326, quoting *Jackson v. Virginia*, 443 U.S. at 318-19, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89. Under this standard, "a reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Bush*, 214 Ill. 2d at 326, citing *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

Defendant offers three arguments to show that his 911 call lacked communicative intent. First, he asserts that nothing in the record "indicates that [he] wanted [Eason] to know that he planned to call the police, or that it was he who had called." Second, defendant asserts that his report was not sufficient to indicate that he was "trying to get the police to conduct a stop," but

merely reporting what he saw "with the intent that police should scrutinize [Eason's] driving." Finally, defendant asserts that police are not "henchmen who can be dispatched by anonymous callers" but are professionals who must use independent judgment and discretion. Therefore, defendant asserts that the officer's stopping Eason without first corroborating the report was not a "natural and probable consequence of [defendant's] 911 call." All three of defendant's arguments fail.

The trial court found defendant guilty of disorderly conduct for filing a false police report. Defendant has not challenged this conviction. Therefore, we base our analysis of defendant's communicative intent on the trial court's unchallenged finding that "defendant at some point prior to making the 911 call determined that the van driver was [Eason] and made a false report as outlined in counts 2, 3, and 4 knowing there was no reasonable grounds for doing so."

Defendant's first argument is that the State has failed to meet its burden because there is no evidence that defendant intended Eason to know that it was he who called the police. This argument is unpersuasive.

Defendant cites no case law to suggest that a defendant must intend that the target of his harassment know that it was he who sent a message in order for there to be communicative intent. To the contrary, the one case defendant cites to support this argument includes a communication where the defendant threatened the victim by putting a photograph of a tombstone under a rock outside the victim's place of business. See *People v. Libbra*, 268 Ill. App. 3d 194 (1994). The only identifying information on the photograph was the phone number of a relative of the defendant which was printed on the back of the photo. *Libbra*, 268 Ill. App. 3d at 200.

Moreover, the position advocated by defendant is contrary to the purpose of the statute, as it would

prohibit the prosecution of an individual who harasses or threatens a witness so long as he takes steps to keep his identity a secret. This result runs afoul of the statute's purpose of protecting witnesses from harassment.

Defendant's second contention is that his report was not sufficient to indicate that he wanted Eason to be stopped, but was merely an indication that he wanted her driving to be subject to greater scrutiny. At oral argument, defendant's attorney noted that defendant did not say that he saw Eason drinking alcohol and that if defendant "had reported that he saw her drinking from a bottle of Jack Daniels, we would have a different case." Therefore, it is defendant's contention that Eason's being stopped was not a reasonable and foreseeable result of the report he gave to the 911 operator. Thus, he asserts, there could be no communicative intent because he never intended Eason to actually be stopped as a result of his report. Defendant's argument is flawed in two ways.

First, defendant's argument is factually flawed. Defendant did not simply state that he suspected a drunk driver or that he thought he saw a bottle. The 911 operator directly asked defendant, "Did you see them drinking or you just suspect it?" Defendant replied, "Yeah, I saw a bottle in their car actually, it was that was so weird [sic], half covered up." Defendant alleges that his reference to a bottle was innocuous as many beverages come in bottles. Defendant is correct that many types of beverages which are legally consumable in a vehicle are packaged in bottles. However, these legal beverages are rarely consumed when still in a paper bag or otherwise "half covered up." This court fails to see a significant difference between defendant's hypothetical report of drinking from a bottle of Jack Daniels and the actual report of Eason drinking from a bottle that was "half covered up."

The second reason defendant's argument is flawed is

that police involvement is a reasonable and foreseeable consequence of making a 911 call. Police involvement or the involvement of other emergency services is, in fact, the purpose of making a 911 call. Moreover, defendant was aware of this purpose, as he testified that he had made "a lot" of calls to 911 since he turned 16. Defendant testified that he had called 911 at least five times in the previous two years alone. Furthermore, at least one of these calls was made after a reckless driver had left the area and was no longer placing defendant or his family at risk.

Defendant conceded that, at a minimum, he wanted Eason to be subject to police scrutiny. Further, defense counsel stated at oral argument that defendant "hoped" that this scrutiny would lead to her being pulled over. The fact that defendant desired or hoped that Eason would be pulled over when added to the uncontested evidence that there was no basis for defendant to call 911 in the first place and defendant's statement that he saw a half-covered bottle evinces an intent that the police stop Eason.

Defendant's final argument that his conviction should be overturned is that Auld had a responsibility to exercise independent judgment in deciding whether to stop Eason, thereby breaking the causal chain. This argument also fails.

The question in this case is not whether the officer had a lawful basis to stop Eason on the morning of July 7, 2004. The issue is whether defendant, with the intention to "harass or annoy" Eason, "communicate[d] directly or indirectly" with Eason "in such manner as to produce mental anguish or emotional distress." See 720 ILCS 5/32—4a(a) (West 2004). Even if the officer could have broken the chain of events through electing not to stop Eason, that argument is irrelevant as those are not the facts of this case.

In this case, Auld stopped Eason because of defendant's call to 911. It is undisputed that defendant did not have a good-faith basis to call 911. The uncontested evidence before this court is that defendant lied when he reported Eason was swerving and lied about seeing a bottle half covered up. The fact that defendant's call was not certain to cause an officer to stop Eason is of no significance because in this case, what defendant hoped would happen did happen. Eason was stopped, without justification, based on defendant's false report.

The evidence produced by the State is sufficient to show that defendant intended to communicate with Eason when he called 911. Defendant called 911 without justification alleging that Eason was a drunk driver and claiming that he had seen her drinking from a half-covered bottle. When he made this call, his counsel conceded, he hoped Eason would be stopped. At the point in time that defendant made this false report to 911, with the hope that Eason would be stopped, the intention-to-communicate element of the offense was complete. Therefore, we affirm the judgment of the appellate court.

## CONCLUSION

The evidence shows that defendant called 911 without justification alleging that Eason was a drunk driver and claiming that he had seen her drinking from a half-covered bottle. When he made this call, he hoped Eason would be stopped by the police. Eason was stopped. She described the stop as being nerve-racking. When Eason learned the reason for her being stopped she experienced "quite a lot of anger." At that moment the chain of events that defendant put in motion with the intent to harass or annoy Eason was complete. Defendant had subtly and indirectly transmitted a message to Eason through the police.

Therefore, the evidence, when viewed in the light most favorable to the State, is clearly sufficient to find

that Eason suffered the requisite level of emotional distress as a direct result of defendant's intentional communication to Eason. The judgment of the appellate court, which affirmed defendant's conviction, is therefore affirmed.

*Affirmed.*