No. 2--00--1201 
 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE                                )   Appeal from the Circuit Court

OF ILLINOIS,                  )   of Lake County.

)

Plaintiff-Appellee, )

)

v.                   )   No. 00--CF--1770

)

JAIME HURTADO-RODRIGUEZ,            )   Honorable

                      )   Raymond J. McKoski,

Defendant-Appellant.                    )   Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Following a jury trial, defendant, Jaime Hurtado-Rodriguez, was found guilty of harassment of a witness (720 ILCS 5/32--4a(a) (West 2000)).  The trial court sentenced defendant to a 10-year extended term of imprisonment.  On appeal, defendant argues that the evidence presented at trial was insufficient to sustain his conviction.  We reverse and remand for a new trial.

I. FACTS

Defendant and three codefendants, Alejandro Ramirez, Fortunado Hernandez, and Juan C. Ramirez, were charged by indictment with harassment of a witness.  The indictment read in pertinent part as follows:

"That [defendants], on or about May 26, 2000, in the County of Lake and State of Illinois, committed the offense of HARASSMENT OF A WITNESS, in that the said defendants with the intent to harass Monica Hernandez, a person who may be expected to serve as a witness in a pending legal proceeding, because of the potential testimony of Monica Hernandez and Noel Cabellero, conveyed to Monica Hernandez, a threat of injury to Monica Hernandez, Noel Cabellero, and Fidel Cabellero ***."

Defendant and Fortunado Hernandez were tried together before a jury on August 23 and 24, 2000.

Prior to trial, a body attachment was issued for the victim, Monica Hernandez.  Monica testified while in the custody of the Lake County Sheriff.  Monica said that on May 24, 2000, at approximately 10:17 p.m., she and her boyfriend  Noel Cabellero were walking on Oak Street in Mundelein.  Monica saw a white Cadillac and said "there goes Alejandro."  As Monica and Noel were walking behind the white Cadillac, someone threw a rock at the vehicle, so Alejandro turned around and asked Noel, "Why did you do it?"  Alejandro got out of the vehicle and pulled out a gun.  Monica said that she got in between Alejandro and Noel and said, "Why are you doing this?  He didn't do it."  Noel also told Alejandro that he did not throw the rock.  At that point, Alejandro pointed his gun at two men on the corner and shot five times.

On Friday May 26, 2000, Monica's cousin, Fortunado Hernandez, found her and told her that Alejandro Ramirez wanted to speak to her.  Monica said that defendant was in the car with Fortunado.  Monica said she was not expecting to see Fortunado that day.  Monica told Fortunado that she was afraid that he might do something to her, and Fortunado said he would not.  Monica then got into the car with Fortunado and defendant.  Fortunado and defendant told her that Alejandro wanted to tell her and her boyfriend Noel to change their statements to the police about the shooting.  Fortunado drove to the house where Alejandro was located.

When they arrived at the house, Fortunado and defendant went inside with Monica and they found Alejandro Ramirez sitting on a couch in the living room.  Monica said that she sat on the couch and Alejandro began to speak.  According to Monica, Fortunado, defendant, and her cousin Suzanna were also present at that time.  Alejandro spoke about the night of the shooting.  Alejandro asked if Monica's boyfriend Noel was in jail.  Monica testified that Alejandro told her that she had to change her statement or something would happen to Noel or his brother, Fidel.  Alejandro also told Monica that he wanted to give her the bond money to get Noel out of jail.  Alejandro said that he wanted to tell Noel to change his statement so that Alejandro would not go to jail for the shooting.  According to Monica, Alejandro also said that he would help her get money so that she and Noel could move out of Mundelein.

At that point, Alejandro, Fortunado, and defendant went into another room.  When they came out Fortunado said that they were going to go to Waukegan to post bond for Noel.  Monica told them they would need $1,000, but they said they were "only going to do $100." 

Fortunado and defendant took Monica to Waukegan to bond Noel out of jail.  Monica said that she did not have any money of her own and that the only money they had was the money Alejandro gave to Fortunado and defendant.  After discovering that they did not have enough money to bond Noel out of jail, Fortunado and defendant brought Monica back to the house where Alejandro was located.  Monica said that she was in the presence of Fortunado and defendant all day except when they went into the other room with Alejandro.

When they got back to the house, Fortunado told Alejandro that they needed more money.  Alejandro said that he was going to send someone to see Noel to tell him to change his statement.  Monica said that she told Alejandro that she would change her statement, and Fortunado took her home.

When asked if Alejandro ever threatened her directly, Monica said "he just told me that if I didn't change the statement or that if Noel didn't change the statement that something was going to happen to Noel or Fidel."  Monica also said that Alejandro said, "I don't want nothing to happen to you because you are of my family."  Monica said that Fortunado and defendant were about 10 feet away when Alejandro made these statements.

On cross-examination Monica testified that she knew Alejandro  before the shooting.  After the shooting, the police showed Monica and Noel some photographs and Monica told them that Alejandro Ramirez was the shooter.  Monica said that Fortunado and defendant never threatened her but did tell her to change her statement so nothing would happen to Noel and Fidel.  Monica said that Alejandro at no time told her that he was going to do anything bad to her because Alejandro said that she was of his family.  Monica said that at no time did Fortunado or defendant say they were going to do anything bad to her.  Monica testified that she had not met defendant before the day in question.  Monica said that all three of them, Alejandro, Fortunado, and defendant, told her to change her statement "[but] they didn't say [it] in a bad way."

The State's next witness was John Monahan, an investigator with the Mundelein police department.  Monahan explained that Monica Hernandez was a witness to a shooting by Alejandro Ramirez.  Monahan said that there was a criminal case pending against Alejandro Ramirez regarding that shooting.  On June 15, 2000, Monahan arrested Fortunado Hernandez on an arrest warrant for harassment of Monica Hernandez as a witness.  Monahan interviewed Fortunado after Fortunado waived his rights pursuant to 
Miranda v. Arizona
, 348 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  At first, Fortunado denied having contact with Monica on May 26, 2000, and said that there was no conversation with her about changing her statement to the police.  Upon further questioning, Fortunado admitted that he and defendant drove to Monica's house and that he got out of the vehicle, went up to the house, and spoke to Monica about family matters.  

Monahan also interviewed defendant, who said that Monica's father was concerned for her but would not elaborate further.  Defendant said that Monica did not get into the car after they spoke and that he did not bring Monica to speak to Alejandro Ramirez.

Monahan spoke to defendant again on June 16, 2000, in the interview room at the Mundelein police station after defendant was arrested for harassment of Monica.  Defendant waived his 
Miranda
 rights and agreed to speak to Monahan.  Defendant told Monahan that he and Fortunado drove to Monica's house and that he stayed in the car while Fortunado got out and had a brief conversation with Monica.  Monica then got into the car and the three of them went to see Alejandro Ramirez.  According to Monahan, defendant said that all three of them went into the house where Alejandro and Fortunado spoke to Monica in another room.  Defendant said he was in another room and did not hear the content of the conversation.  Thereafter, defendant said that he, Fortunado, and Monica went to the Lake County jail, where Fortunado gave Monica $500 to bail out her boyfriend, Noel Cabellero.  When they learned that they did not have enough money for Noel's bond, they left the jail.  Defendant told Monahan that Fortunado dropped Monica off at her house and then dropped him off at his uncle's house.  Defendant wrote out his statement in Spanish and signed it.  The defendant's statement was admitted into evidence and was read by an interpreter in open court as follows:

"Fortunado went to pick me up at the house in Waukegan where I live to go to Mundelein.  And when we were arriving at Mundelein or to Mundelein he said he had to go and see his cousin.  And when he got out of the car--Fortunado, I stayed in the car and Fortunado got out of the car to talk to her.

And later on after a few minutes they came back in the car--they got in the car, and we left to go to Alejandro Ramirez' house to talk.  And we arrived at the house and they started to talk, but they were talking in the living room and I was in the kitchen.

And later they finished talking and we went to Waukegan to the house of Noel Cabellero, but we arrived at Lake County and--and they asked how much was the bond.  But it was a lot of money to pay and they did not get him out.  And later we returned back to Mundelein and when we arrived Fortunado got to his--arrived at his house to change.  And later we went out --we arrived at the house of his cousin and they left her at his house and later he left me at the house of my uncle Max Hurtado."

On cross-examination Monahan said that Monica had not come to the police to tell them about the meeting with Alejandro, Fortunado, and defendant; rather, the police had approached Monica.  Monica never told Monahan that defendant or Fortunado threatened her; Monica just said that she felt she had to go with them, that she really did not have a choice.

Next, a certified copy of an information and arrest warrant charging Alejandro Ramirez with aggravated discharge of a firearm, aggravated unlawful use of weapons, reckless discharge of a firearm, and two counts of aggravated assault on May 24, 2000, was admitted into evidence.  The State rested.  Defendant moved for a directed verdict of acquittal.  The trial court denied defendant's motion.

The defense called Azucena Avilez who testified that she is Monica Hernandez' cousin.  Azucena said that Fortunado, Alejandro, defendant, and Monica met at her house in Mundelein on May 26, 2000.  Azucena said that Monica did not appear upset and was not crying.  Azucena testified that the four went into her living room while she was in the kitchen and outside.  Azucena said that she did not hear any threats made to Monica by Alejandro or anyone else.  When Monica left Azucena's house with defendant and Fortunado, Monica embraced Alejandro and said goodbye.  According to Azucena, defendant and Fortunado came back to her house later that day but Monica did not.

Defendant testified that on May 26, 2000, his friend Fortunado picked him up and they went to Mundelein.  They drove to Monica Hernandez's house.  According to defendant, he did not know Monica at the time and did not know she was a witness to a shooting.  Fortunado got out of the car and spoke to Monica while defendant remained in the car.  Defendant did not hear the conversation between Fortunado and Monica.

Defendant said that Monica came with him and Fortunado to Azucena's house.  When they got to Azucena's house, Alejandro was in the living room.  Defendant said that he went into the kitchen. According to defendant, he was only with Monica at that house when they arrived and when they left.  Defendant said that Monica was not crying and did not appear upset when she left.  Defendant testified that he did not hear Alejandro or Fortunado make any threats to Monica because he was in the kitchen the entire time they were at Azucena's house.

Defendant said that he, Fortunado, and Monica left the house together to go to the Lake County jail to bond out Monica's boyfriend, Noel Cabellero.  Defendant said Monica hugged Alejandro when they left.  It was not defendant's understanding that they were trying to bond out Cabellero to get Monica to change her statement.  After leaving the Lake County jail, defendant, Fortunado, and Monica did not return to Azucena's house.

Fortunado Hernandez testified that he and defendant drove to his cousin Monica's house on May 26, 2000.  According to Fortunado, he did not know she was a witness to a shooting at that time.  Fortunado said that he told Monica that her parents were worried about her because she had run away from home.  Fortunado also testified that Alejandro told him that if he saw Monica to ask her to come and talk to him.  Fortunado asked Monica to come talk to Alejandro, and she agreed to come with him and defendant.  When they arrived at Azucena's house, Monica said hello to Azucena and then Monica went into the living room.  Monica took a seat on the couch and started talking to Alejandro.  Fortunado said that defendant sat in the kitchen and he sat on the couch and was also walking around the house.  Fortunado said that, when he was in the company of Alejandro and Monica, he did not hear any threats being made and he did not hear what they were talking about.  Fortunado said he never made any threats to Monica.  According to Fortunado, Monica was not upset when she was at Azucena's house.

Fortunado said that he left Azucena's house with Monica and defendant to go to the Lake County jail.  According to Fortunado, Monica gave Alejandro a hug when they left.  Fortunado said that they tried to bond Noel Cabellero out of jail but they were unsuccessful.  Fortunado said Monica only had $100 but she needed $1,000.  Fortunado did not believe that he was taking Monica to bond out her boyfriend in an effort to keep Monica from testifying in another case.  Fortunado said that they did not take Monica back to Azucena's house after leaving the jail.  Fortunado testified that when the police officer interviewed him he did not say that he had no contact with Monica Hernandez on May 26, 2000; he just did not make any statement at all.  Defendant then rested.

In rebuttal, for impeachment purposes, the State published defendant's prior convictions of unlawful use of a weapon by a felon and aggravated discharge of a firearm.  The State then recalled investigator Monahan who testified that, when interviewed, Fortunado initially denied any contact with Monica and then later  admitted speaking with Monica but denied that he took Monica to see Alejandro and to the Lake County jail.  

 The jury found defendant guilty of harassment of a witness.

The trial court found that defendant was eligible for an extended-term sentence pursuant to section 5--5--3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5--5--3.2(b)(1) (West 2000)) due to a prior Class 1 felony conviction within the last 10 years.  Thereafter, the trial court sentenced defendant to 10 years' imprisonment.  Defendant timely appeals.

II. DISCUSSION

Defendant argues that his conviction must be reversed because the State failed to present any evidence in support of the elements of harassment of a witness.  
We disagree.  

The relevant inquiry in reviewing the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Perez
, 189 Ill. 2d 254, 265-66 (2000).

Defendant argues that the State presented no evidence that defendant, or anyone else, communicated with Monica in a manner that produced "mental anguish or emotional distress" as required by section 32--4a(a) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/32-4a(a) (West 2000)). We agree that no such evidence was presented.  However, the statute provides two alternate bases of criminal liability for the offense of harassment of a witness.  A person is guilty of harassment of a witness if, with the intent to harass or annoy a witness, he (1) communicates with the witness in such a manner as to produce mental anguish or emotional distress 
or
 (2) conveys a threat of injury or damage to the person or property of the witness or witness's family member.  720 ILCS 5/32--4a(a) (West 2000); 
People v. Berg
, 224 Ill. App. 3d 859, 863 (1991).  In this case the State proceeded on the second basis.  Therefore, an insufficiency of evidence of metal anguish or emotional distress is inconsequential.

Next, defendant argues that there was no evidence presented that Monica was threatened because Monica testified that she was not threatened and that the requests that she change her statement to the police were not made "in a bad way."  We disagree.

Monica testified that Alejandro told her that she had to change her statement "or something is going to happen to Noel or his brother, Fidel."  With respect to a threat made to Monica of injury to her person, the following exchange between the assistant State's Attorney and Monica took place: 

"ASSISTANT STATE'S ATTORNEY: Did Alejandro Ramirez ever threaten you?

MONICA: He just told me that if I didn't change the statement or that if Noel didn't change the statement that something was going to happen to Noel or Fidel.

ASSISTANT STATE'S ATTORNEY: Did he also threaten you that something might happen to you?

DEFENSE COUNSEL: Objection.

MONICA: He said I don't want nothing to happen to you because you are of my family

THE COURT: Answer will stand.

* * *

ASSISTANT STATE'S ATTORNEY: When Alejandro Ramirez told you that he didn't want anything to happen to you, who was present?

MONICA: My cousin and [defendant] were there.  I don't want nothing to happen to you because you are cousin of Fortunado.

* * *

ASSISTANT STATE'S ATTORNEY: How many times did Alejandro Ramirez tell you that he didn't want anything to happen to you?

MONICA: Like one time."

Monica also testified that, at the time, she understood that if she changed her statement to the police about the shooting that nothing would happen to her.  

The statute requires defendant neither to specify the type of injury he intends to inflict nor to accompany the threat with physical violence.  
Berg
, 224 Ill. App. 3d at 865.  Also, a single threatening statement, together with circumstances that indicate the threatening party is likely to carry out the threat, can support a conviction.  
Berg
, 224 Ill. App. 3d at 865.  The statement made to Monica by Alejandro that he didn't want anything to happen to Monica, together with the circumstance that Monica had two days earlier seen Alejandro discharge a firearm at two men on the street, is an indication of a threat of injury to Monica's person.  When viewed in a light most favorable to the State, we conclude that a rational trier of fact could have found a threat to the person of Monica Hernandez beyond a reasonable doubt.

Defendant also argues that there was a complete lack of evidence at trial to support a finding that defendant was accountable for the threats made by Alejandro to Monica.  We disagree.

When reviewing a question as to a defendant's accountability for an offense, we must determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Cooper
, 194 Ill. 2d 419, 424-25 (2000).  Accountability exists under Illinois law when:

"[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."  720 ILCS 5/5--2(c) (West 2000).

On this issue, the jury was instructed accordingly.

Monica's testimony established that defendant and Fortunado did not directly threaten her.  However, Monica said that defendant and Fortunado both told her to change her statement to the police so that nothing would happen to her.  Monica's testimony also established that, two days after Monica and Noel Cabellero witnessed the shooting, defendant and Fortunado unexpectedly came to her house and told her that Alejandro wanted to tell her and Noel to change their statements to the police.  Defendant and Fortunado then took Monica to Alejandro.  According to Monica, defendant and Fortunado were present in the room when Alejandro made the statements to Monica threatening injury to the persons of her, Noel Cabellero, and Fidel Cabellero.  Next, defendant and Fortunado took Monica to bond Noel Cabellero
 out of jail with money provided by Alejandro.  Finally, after failing to bond Noel out of jail, defendant and Fortunado took Monica back to Alejandro, where Monica told Alejandro that she would change her statement to the police.

The foregoing evidence, although controverted by defendant and Fortunado at trial, when viewed in a light most favorable to the State, is sufficient to find beyond a reasonable doubt that defendant aided and abetted Alejandro's harassment of Monica before and during the commission of the offense.  Accordingly, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant committed the offense of harassment of a witness. 

In exceptional candor and in recognition of its obligation to assist the court in seeking justice (see 188 Ill. 2d R. 3.8(a)), the State calls our attention to the fact that erroneous jury instructions on the offense of harassment of a witness were given in this case.  We note that defendant did not object to these instructions when tendered, submit alternate instructions, or raise the issue on appeal.  Failing to object to jury instructions at trial generally waives any claim of error; however, substantial defects are not waived by a failure to make a timely objection if the interests of justice require.  See 177 Ill. 2d R. 451(c); 
People v. Gengler
, 251 Ill. App. 3d 213, 219 (1993).  Claims of substantial defects in jury instructions in criminal cases may be considered even where defendant has failed to make timely objections.  
People v. Ward
, 187 Ill. 2d 249, 264-65 (1999).  Instructions on the elements of the offense charged are within the category of instructions to which the concept of waiver will not be employed to bar reversal if a defendant is convicted in the absence of a necessary instruction.  
Gengler
, 251 Ill. App. 3d at 219.  Accordingly, we will review this issue despite defendant's failure to raise it because the instructions given did not properly state the elements of the offense charged. 

The following definition instruction was given at the State's request:

"A person commits the offense of harassment of a witness when he, with the intent to harass or annoy one who may be expected to serve as a witness in a pending legal proceeding, because of the potential testimony of the witness, conveys a threat of injury or damage to the property or person of 
any
 
individual
."  (Emphasis added.)

The following issues instruction was given at the request of the State:

"To sustain a charge of harassment of a witness, the State must prove the following propositions:

First Proposition: That the defendant, or one for whose conduct he is legally responsible, conveyed a threat of injury or damage to the property or person of 
any
 
individual
; and

Second Proposition: That Monica Hernandez was expected to serve as a witness in a pending legal proceeding; and

Third Proposition: That the defendant, or one for whose conduct he is legally responsible, conveyed the threat with the intent to harass or annoy Monica Hernandez because of the potential testimony of Monica Hernandez.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."  (Emphasis added.)

The foregoing jury instructions are modified forms of Illinois Pattern Jury Instructions, Criminal, Nos. 22.11Y, 22.12Y (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d Nos. 22.11Y, 22.12Y (Supp. 1996)).  The State concedes, and we agree, that the language "of any individual" contravenes the language of section 32-4a(a) of the Criminal Code, which provides as follows:

"Harassment of representatives for the child, jurors, witnesses and family members of representatives for the child, jurors, and witnesses.

(a) A person who, with intent to harass or annoy one who has served or is serving or who is a family member of a person who has served or is serving (1) as a juror because of the verdict returned by the jury in a pending legal proceeding or the participation of the juror in the verdict or (2) as a witness, or who may be expected to serve as a witness in a pending legal proceeding, because of the testimony or potential testimony of the witness, communicates directly or indirectly with the juror, witness, or family member of a juror or witness in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury or damage to the property or person of any juror, 
witness
, 
or family
 
member
 of the juror or witness commits a Class 2 felony."  (Emphasis added.) 720 ILCS 5/32--4a(a) (West 2000).

Further, section 32--4a(c) defines "family member" as follows:

"(c) For purposes of this Section, 'family member' means a spouse, parent, child, stepchild or other person related by blood or by present marriage, a person who has, or allegedly has a child in common, and a person who shares or allegedly shares a blood relationship through a child."  720 ILCS 5/32--4a(c) (West 2000).

The erroneous instructions in the IPI Criminal 3d Nos. 22.11Y, 22.12Y (Supp. 1996) have been corrected to conform with the language of section 32--4a(a) in the Illinois Pattern Jury Instructions, Criminal, Nos. 22.11Y, 22.12Y (4th ed. 2000) (hereinafter IPI Criminal 4th) by  requiring, in a case such as this, proof of a threat of injury or damage to the property or person of the witness or family member of the witness rather than "any individual."  The IPI Criminal 4th also includes an instruction defining "family member."  See IPI Criminal 4th No. 22.11Z.

The State concedes that there is nothing in the record to explain why the third edition instruction, and not the fourth edition instruction, was given despite the availability of the fourth edition at the time of trial.  In any event, the instructions given to the jury were not accurate statements of the law because they removed from the jury the consideration of an element of the offense and are therefore erroneous.  See 
People v. Ogunsola
, 91 Ill. App. 3d 26, 32 (1980).

Next, we must consider whether reversible error occurred.  The State asserts that, because defendant was proved guilty beyond a reasonable doubt, the instructions in question constituted harmless error.  We disagree.

"Error arising from the tendering of jury instructions is deemed harmless only if the submission of proper instructions to the jury would not have yielded a different result."  
People v. Shaw
, 186 Ill. 2d 301, 323 (1998).  In this case the State alleged that defendant and Fortunado were accountable for the threats made by Alejandro to Monica.  Alejandro allegedly told Monica that if she did not change her statement to the police about the shooting, something would happen to her, her boyfriend Noel Cabellero, or her boyfriend's brother, Fidel Cabellero.  Because we have concluded above that there was sufficient evidence for the jury reasonably to conclude that Alejandro threatened injury to the person of the witness Monica, a properly instructed jury could have found defendant committed the offense charged.  However, the inquiry here is not whether a correctly instructed jury could have found defendant guilty but, rather, whether they also could have found defendant not guilty.  The evidence presented at trial did not preclude an acquittal based upon want of proof beyond a reasonable doubt of a threat made to Monica of injury to her person.  The instructions given to the jury referring to "any individual" allowed the jury to find defendant guilty based only on the threats of injury to the persons of Noel Cabellero and Fidel Cabellero, who were not proved to be "family members" as defined in the statute.  See 720 ILCS 5/32--4a(c) (West 2000).  

Because the State charged the offense of harassment of a witness based on threats of injury to three different persons in one count, and the jury was instructed accordingly, we do not know if the jury believed that a threat of injury to all three persons, to Monica, or to just Noel Cabellero and Fidel Cabellero occurred.  In other words, the jury reasonably could have concluded from the evidence that Alejandro threatened to injure only Noel Cabellero and Fidel Cabellero if the statements to the police were not changed.  A finding that Alejandro threatened only the persons of Noel Cabellero and Fidel Cabellero would mandate an acquittal under the statute.  If the State had separated each threat into a separate count, the jury had been instructed accordingly,  the same erroneous instruction had been given, and the jury had found defendant guilty based on the threat made to Monica's person, we now could conclude that a properly instructed jury would have made the same finding.  However, because the guilty verdict could have been based on all, or any one of the alleged threats, we cannot say that if the jury had been instructed properly it would not have yielded a different result.  See 
Shaw
, 186 Ill. 2d at 323.  If it is possible that a properly instructed jury could acquit, then, when we decide that a jury was not properly instructed, we must reverse the judgment and remand the cause for a new trial.

III. CONCLUSION

In light of the error made in instructing the jury, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BOWMAN and CALLUM, JJ., concur.