*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FRANKLYN DIMUN GARRISON,

Defendant-Appellant

UNPUBLISHED
November 19, 2020

No. 334063
Wayne Circuit Court
LC No. 15-007041-01-FC

ON REMAND

Before: STEPHENS, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court for consideration of two issues not addressed during our initial review of this case: "Issues V and VI in the defendant's supplemental brief."[1] After consideration of these issues, we again, affirm.

## I. BACKGROUND

Our previous opinion summarized the facts of this case as follows:

Defendant's convictions [of first degree felony murder, MCL 750.316(1)(b), second degree arson, MCL 750.73, fourth degree arson, MCL 750.75, felon in possession of a firearm, MCL 750.224f, and felony firearm, MCL 750.227b,] arise from the July 18, 2015 shooting death of Kevin Walker, and the burning of Walker's home and of one of his vehicles sometime between 11:00 p.m. and midnight. On the evening of July 18, 2015, defendant asked Desmond Johnson, one of several guests at his Eastside home for a ride to a then unnamed friend's house on the Westside of town sometime between 9:30 and 10:00 p.m. Johnson

---

[1] *People v Garrison*, ___ Mich ___; 931 NW2d 306 (2019).

-1-

drove defendant and Dakairi Pannell (aka Kaelen Allen) to what became known as the victim's home on Detroit's Westside. Johnson waited in the car while defendant and Pannell went toward the house. After waiting about ten minutes, Johnson called defendant, who did not answer. Johnson called defendant again and told defendant that he was leaving and drove away at about 10:30 p.m. About an hour later, defendant called Johnson and asked him to return to give defendant a ride, but Johnson refused. Shortly after making this call, defendant turned off his cell phone and did not turn it back on until 2:55 a.m. at which time he placed a call to Pannell/ Allen.

Sometime after 11:00 p.m., Walker's neighbor Geraldyne Reed, saw one of Walker's cars pull out of the spot where it had been parked for months, heard what she thought were firecrackers, and saw the car drive off seconds later. Ten or fifteen minutes later, her son Edward Reed heard someone yelling "fire," and observed Walker's home ablaze. He also saw Walker's body outside of the home on the ground. Mr. Reed waited a few minutes before he placed a call to 911 at 12:48 a.m. The police and fire departments responded shortly thereafter. Fire experts estimated that the fire had been burning for a while and noted that it would have taken at least 20 to 30 minutes to burn in earnest if no accelerant had been used. When the police arrived they observed Walker's body and they noted that he had been shot multiple times and the pockets of his pants had been turned out. No drugs, money, or jewelry were found on his person. Walker's car was later found burned about six blocks from defendant's eastside home.

Defendant was arrested on July 30, 2015 and interviewed by Detroit Police Sergeant Derrick Griffin. His cell phone was examined. However, defendant had manually deleted all of the call information from the cell phone from February 19, 2015 through July 24, 2015. During his interview, defendant admitted getting a ride from Johnson to Walker's house but denied being accompanied by anyone else. He also stated that he was only at the victim's house for about 15 or 20 minutes and that he got home around 1:30 or 2:00 a.m. He insisted that he did not remember how he got home and denied taking one of Walker's cars back home to the east side. Once confronted by Sergeant Griffin with the fact that his cell phone records showed that he had been in the area of the victim's house for about two hours, defendant nodded and replied "that it could have been that long, he was "f*****
up." Johnson was also arrested and interviewed, at which time he stated that defendant had given him a broken watch. The watch was later given to the police by Johnson's mother and analyzed for DNA. Johnson also identified Pannell/Allen as the person who rode with defendant in his car to the victim's house.

Several witnesses were called at trial. In addition to the Reeds and Johnson, two of Walker's relatives testified. At trial Walker's nephew and daughter testified that he sold illegal drugs, usually had large amounts of money in his possession, and often wore a significant amount of jewelry. Additionally DNA evidence was introduced. Swabs from Walker's pockets, fingernail clippings, and a watch were examined. The pocket samples showed a mixture, with one major donor and at least two others. Walker was the major donor and Johnson and defendant were

excluded as major donors. The sample was insufficient for association purposes concerning the minor donors. The fingernail clippings showed Walker as the sole donor. The watch showed a mixture with Johnson being the major donor. This sample was also insufficient for comparison concerning minor donors. State Police Forensic Scientist Ashley Bolahan, testified that she could not include or exclude anyone from being a minor donor. A cell phone expert was also called who placed the defendant's cell phone in the area of the victim's home from 10:39 p.m. to 11:27 p.m.

After the denial of a motion for directed verdict, the defendant called his mother as a witness. While he had filed a notice of alibi, the alibi witness, the defendant's sister arrived late to court and was not called as a witness. The jury deliberated and returned the guilty verdict from which the defendant appeals.[2]

On appeal, defendant filed an attorney-written brief and a Standard 4 Brief, and argued the sufficiency of the evidence to convict him at trial, prosecutorial misconduct, the effective assistance of his trial counsel, the issuance of the search and arrest warrants against him, his right to a speedy trial, and the cumulative effect of alleged trial errors. We affirmed.

Now on remand from our Supreme Court we address two additional issues from defendant's Standard 4 Brief: 1) the district court's bindover decision, and 2) the prosecutor's conduct at trial.

## II. PROBABLE CAUSE

"This Court reviews de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Redden*, 290 Mich App 65, 83; 799 NW2d 184 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

"A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator." *People v Tower*, 215 Mich App 318, 319-320; 544 NW2d 752 (1996). "To establish that a crime has been committed [at the preliminary examination], a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). "Probable cause is established if the evidence would persuade a careful and reasonable person to believe in the defendant's guilt." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018).

In his Standard 4 Brief, defendant argues that there was no direct or circumstantial evidence presented at the prelminary examiation to support that he was at the scene of the murder, had a motive to murder, participated in killing or robbing Walker, and set Walker's house or vehicle on

---

[2] *People v Garrison*, unpublished per curiam opinion of the Court of Appeals, issued January 30, 2018 (Docket No. 334063).

fire.  We disagree.  "A defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was fairly convicted of the crimes at trial."  *People v Green*, 313 Mich App 526, 530; 884 NW2d 838 (2015).  "Under Michigan law, any error in the sufficiency of the proofs at preliminary examination is considered harmless if there is sufficient evidence to convict at trial."  *Redmond v Worthinton*, 878 F Supp 2d 822, 844 (ED Mich, 2012).

Defendant was found guilty beyond a reasonable doubt at trial.  Defendant challenged the suffiency of the evidence to convict him in the original opinion before this Court, and we affirmed his convictions.  We did not find in our prior opinion, nor here, as discussed below, any error meriting reversal.  Because we conclude that defendant was fairly convicted at trial, we decline to review whether the evidence at the preliminary examination was sufficient to warrant a bindover. *Green*, 313 Mich App at 531.

Related to this argument is defendant's claim that the prosecutor acted with "egregious misconduct" in "bringing charges without probable cause."  "[T]he decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor."  *In re Diehl*, 329 Mich App 671, 699; 944 NW2d 180 (2019).  We review the prosecutor's charging decision under an "abuse of power" standard to determine if the prosecutor's charging decision was made for reasons that were "unconstitutional, illegal or ultra vires."  *People v Russell*, 266 Mich App 307, 316; 703 NW2d 107 (2005); *People v Barksdale*, 219 Mich App 484, 488; 556 NW2d 521 (1996) (citation omitted).  This Court reviews unpreserved issues under the plain error doctrine.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  We will not second-guess the prosecutor's exercise of discretion in the absence of evidence of abuse of power.  *Barksdale*, 219 Mich App at 489.

Defendant does not argue that he was subject to the charges for an unconstitutional, illegal or illegitimate reason.  Rather, defendant challenges the evidence in support of the charging decision.  We find this contention to be another attack on the sufficiency of the evidence at the preliminary examination.  Again, we found that there was sufficient evidence to support the charges, and that defendant was fairly convicted beyond a reasonable doubt at trial.  Therefore, there is no basis on this record for us to conclude that the prosecutor abused his power in charging defendant.

## III.  PROSECUTORIAL MISCONDUCT

Defendant additionally argues in his Standard 4 Brief that the prosecutor committed misconduct denying him a fair trial by (1) making statements in opening statement and closing argument that were not supported by the evidence, and (2) improperly vouching for a witness.

Defendant failed to object to the prosecutor's statements so this issue is unpreserved.  "Unpreserved issues are reviewed for plain error affecting substantial rights."  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *Id*.  "[T]his Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect."  *Id.*

Further, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (internal citation omitted). "To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals,* 285 Mich App 1, 22; 776 NW2d 314 (2009).

The majority of prosecutorial misconduct that defendant complains of occurred in either opening statement or closing argument. "The purpose of opening statement is to tell the jury what the advocate proposes to show." *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976). It is also "the appropriate time to state the facts that will be proved at trial." *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010). "The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987). Neither the arguments made by attorneys in opening statement or in closing argument are evidence for the jury to consider.

Defendant first argues that the prosecutor committed misconduct during opening statement when he told the jury:

> At the end of this trial you're going to get to compare everything, you're going to get to see the cell phone records you're going to get to some of the forensic dump, you're going to get to hear testimony from the witness stand. And you're going to see circumstantially that [defendant] will not be able—or, excuse me, I misspoke. You will not be able to see where [defendant] was from 12:00 o'clock until 2:55 in the morning.
>
> Now, another really important point before I leave you, is that after the phone was activated again whether it was turned off or whether it was used [defendant] made three phone calls. The first three phone calls that were made at 2:55 in the morning were to Caylen Allen. Now, I told you during voir dire that there was possible alternative theories. Now one theory is that, obviously, [defendant] goes over there and he actually commits this crime and he does the robbery himself. The other theory is that he assisted Mr. Allen in doing so. At the end of this trial I'm going to be able to come back to you and I'm going to be able to argue that the proofs, the proofs meaning evidence that's going to be shown will support one of those two theories.

And, in closing statement when the prosecutor argued:

> Now, after this particular phone call at 11:27 p.m. with Desmond Johnson, the phone goes dead. Okay. From 11:27 p.m. until 2:55 a.m. in the morning, the following day. From the 18th of July 2015 to the 19th of July 2015, [defendant's] phone is dead. You don't know where he is or at least the phone where he is [sic]. You don't know if – there's no phone calls that are made. There's no text message that are made. There's no connection with the tower. And I argue to you, ladies and gentlemen, one of the reasons I asked Sergeant McGinnis, who's the cell phone

-5-

analysis and mapping expert, I asked him, well, if I turn my phone off, is that going to you know, communicate with the towers? And he said, no. I [sic] can't. It helps you disguise your movements during the time of the murder, the larceny or the stealing, and then the arsons, which are the house and the car.

Defendant argues that these statements improperly inferred defendant had the opportunity to commit the crimes and were not supported by admissible evidence. We disagree.

A review of the prosecutor's statements in context reveals no misconduct. Rather, in opening statement, the prosecutor argued what he believed the evidence would show and in closing argument, the prosecutor argued how the evidence supported his theory that defendant either alone or with the assistance of Allen, robbed and murdered Walker, and set Walker's home and vehicle on fire. The prosecutor was allowed to argue his theory of the case and all reasonable inferences from the evidence supporting his theory. *Unger*, 278 Mich App at 236.

Relying on the same statements above, defendant argues that the prosecutor improperly admitted cellular phone records at trial to support statements concerning the tracking of defendant's whereabouts. Defendant contends the records were inadmissible under MRE 702 based on McGinnis's admission that "GPS mapping is a work in progress." Assuming that McGinnis made this statement, because defendant fails to identify its location in the record, it did not render the cellphone records or McGinnis's accompanying testimony inadmissible.

"[A] prosecutor may not make a statement of fact to the jury that is unsupported by the evidence...." *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007). The prosecutor's argument that the jury would not know defendant's whereabouts between 11:27 p.m. on July 18th and 2:55 a.m. on July 19th was supported at trial by defendant's cellphone records and prosecution cellphone expert McGinnis's testimony. McGinnis used defendant's cellphone records to map defendant's cellphone activity from 9:34 p.m. on July 18, 2015, to 11:52 a.m. on July 19, 2015. He testified that each time defendant's cellphone was used, it interacted with a cellphone tower. It was undisputed that defendant was the only individual in possession of his cellphone on July 18th and 19th. Thus, the jury could infer that the charted cellphone activity showed defendant's movement beginning at or near his home on July 18th 9:34 p.m., travelling toward Walker's home at 10:08 p.m., at or near Walker's home at 10:39 p.m. and 11:27 p.m., and then back home at 2:55 a.m. on July 19th. Because there was no cellphone activity from 11:27 p.m. until 2:55 a.m., there was no direct evidence of defendant's whereabouts during that time. Thus, it was not misconduct for the prosecutor to argue that the jury would not be able to see where defendant was "from 12:00 o'clock until 2:55 in the morning."

Further, only three preconditions need be met for expert testimony to be admissible under MRE 702: (1) the expert must be qualified, (2) the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue....", and (3) the expert's testimony must be "based on sufficient facts or data," "the product of reliable principles and methods," and must apply "the principles and methods reliably to the facts of the case." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 79 n 31; 684 NW2d 296 (2004) citing MRE 702. Defendant fails to challenge McGinnis's expert qualifications, discuss how McGinnis's testimony would not assist the trier of fact, and show that mapping is an unreliable method or was applied unreliably to the facts of the case here. We disagree with defendant's assertion that the testimony was irrelevant. McGinnis's

testimony was relevant to the investigation of the murder and arsons. It was also relevant to establishing the identity of possible suspects. McGinnis's testimony of defendant's cellphone use was derived from defendant's cellphone records which were obtained directly from defendant's cellphone provider, Metro PCS. Interpretation of those records assisted the trier of fact in understanding which numbers on the call logs were relevant and distinguishing incoming from outgoing calls, voicemails from text messages, and so on. Lastly, alleged testimony that GPS mapping was a work in progress did not render the testimony unreliable. McGinnis testified that he was specifically trained to analyze and map cellular phone calls and used that training in this case. Neither did the alleged testimony render the records inadmissible where such testimony would have went to the weight of the evidence and not its admissibility. It follows that where the cellular records were not improperly admitted in support of McGinnis's testimony, the prosecutor's statements regarding McGinnis's testimony were also not unsupported.

Defendant additionally argues that the prosecutor improperly stated in opening statement that "there was a falling out between [defendant] and the victim", because the statement was without evidentiary support and implied there was conflict between the defendant and Walker. We disagree.

The statement in context was:

> And then you're going to hear from the family members of Mr. Walker because I know some of you are thinking, well, what's the connection. Well, [defendant] and Mr. Walker had known each other in the past, in fact, they're related through cousins. And there was a falling out or they just didn't talk to each other for a while and around two or three weeks before this homicide took place [defendant] contacted Kimberly Lamb another witness that you may hear from in this case; and asked for his number, and his number being Kevin Walker's number.

Later, Lamb, who was Walker's daughter, testified that defendant and Walker had been friends for approximately 16 years and had just recently rekindled their friendship. The prosecutor's statement was not improper where it only described what the prosecutor thought the evidence was going to show and represented one of two possible reasonable inferences to be drawn from Lamb's testimony as to why defendant and Walker had not spoken in so long.

Defendant additionally argues that the prosecutor's following statement in closing argument improperly inferred that bullets found in defendant's home were the same as those from the weapon used to murder Walker:

> Now, I argue to you, ladies and gentlemen, that the most prominent bullet that was found, was the .38 special and why is the .38 special round or bullet important? It's important because it goes to a revolver and why is a revolver important in this particular case? Because there were no shell casings found. And if you want -- if you want to say that, you know, yeah, I suppose a -- a semiautomatic gun could have been used and you shoot someone in the head and then you're like, man, I've got pick up these five shell casings that would have been on the ground and then I've got to bust out the window and I have to -- if I could get into the car, burn down the house and then drive away. I suppose that could

happen. But the great thing is, is that you get to use your reason and common sense when deciding whether or not that hypothetical scenario makes sense or the one that I'm arguing to you today. What makes more sense? What is reasonable?

The reasonable conclusion that you can make is that he has the means to carry out the execution. Now, there was no gun found. Okay. The People admit that. But so what. We know that Mr. Walked [sic] died as a result of gunshot wounds to the head. When you talk about the -- the crime and the arson and then the cell phone evidence and then the lack of cell phone evidence, does it surprise the 13 of you that a gun was never found? No. It wouldn't surprise you. Especially when you think of the time line and the fact that the murder took place on the 18 and 19 of July and then [defendant] wasn't taken into custody for another nine days. That's nine days to dispose of any physical evidence that you may have had on you, with you, in your house, that's -- that's a long time. A long time.

The type of bullet that was used to murder Walker was unknown. There were no shell casings found at the scene, no murder weapon was ever recovered, and only unidentifiable bullet fragments were recovered from Walker's body. Law enforcement did however seize multiple types of ammunition from defendant's residence, including 42 .38 caliber bullets. At trial, a forensic technician testified about the difference between semi-automatic and revolver weapons in that semi-automatic weapons eject the shell casings from the weapon after firing whereas revolvers maintain the shell casings in the bullet chamber after the bullet is spent. From this evidence, the prosecutor reasonably inferred that the lack of spent shell casings at the scene was indicative of the murder weapon having been revolver. It was not improper for the prosecution to then infer that defendant at one time possessed a revolver given the amount of .38 caliber bullets seized, and that defendant disposed of the revolver, given the time that had elapsed in between the murder and his arrest.[3]

Defendant's last claim of prosecutorial misconduct is that the prosecutor improperly vouched for witness Johnson in closing argument when he argued:

So like I said before, you have no reason to think that Desmond Johnson could have been involved in this particular situation and he has no reason to lie about what he said, because he's talking about one of his really good friends.

Again, we disagree.

A "prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261,

---

[3] Defendant additionally argues that the prosecutor improperly admitted a watch into evidence that a witness denied was the same watch given to him by defendant. Defendant is correct that when confronted with and asked whether the watch presented at trial was the same watch given to him from defendant, witness Johnson disagreed. However, defendant is incorrect in his assertion that the watch was admitted into evidence. According to the transcript, there was no request by the prosecution that the watch be admitted; neither was the watch identified as an admitted exhibit.

276; 531 NW2d 659 (1995). However, a prosecutor may "comment on his own witnesses' credibility during closing argument," *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004), and "argue from the facts that a witness is credible", *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Accordingly, the prosecutor's statements were not improper because the prosecutor did not assert some special knowledge concerning the veracity of Johnson's testimony and argued Johnson's credibility from the fact of his relationship with defendant.

In sum, the prosecutor's statements did not amount to misconduct, but were either reasonable inferences based on the evidence at trial or statements in furtherance of the prosecution's theory of the case. Moreover, the allegations of misconduct occurred during opening statements and closing arguments, and the jury was instructed that the lawyers' arguments were not to be considered evidence. "[J]urors are presumed to follow their instructions". *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant lastly contends that the cumulative effect of the prosecutor's misconduct deprived him a fair trial. In some cases, "the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). "In making this determination, only actual errors are aggregated to determine their cumulative effect." *Bahoda*, 448 Mich at 292 n 64. Because no actual errors were found here, defendant's cumulative effect argument also fails.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly